## MARGARET RAY, RESPONDENT, *v.* HENRY T. RAY AND FERDINAND DANGEL, APPELLANTS.

EQUITY—ACTIONS.—An action will not lie in a court of equity, to enforce a decree against a person not a party to such decree; nor will such action lie against one who is a party to such decree when he remains within the jurisdiction, and is amenable to the process of the court which rendered the decree.

COURTS OF EQUITY.—There is no power in a court of equity to confirm or enforce a void judgment by a subsequent proceeding instituted for the purpose.

HUSBAND AND WIFE—COMMON PROPERTY.—The husband has the absolute power to dispose of the common property of himself and wife, to the same extent, and in the same manner as he has of his separate property, until a legal separation has been effected by a court of competent jurisdiction, and a division made under the direction of such court.

INJUNCTION.—An injunction will not lie to prohibit a person from bringing an action to test his right to property, even though such right has been adjudged against him in an action to which he was not a party.

APPEAL from the district court of the second judicial district, Ada county.

*J. Brumback and F. E. Ensign,* for the appellants.

*V. S. Anderson,* for the respondent.

HOLLISTER, J., delivered the opinion. WHITSON, J., concurred. NOGGLE, C. J., dissented.

This case is brought to this court on an appeal from a decree of the district court of Ada county, rendered against the appellants in favor of the respondent. The circumstances of the case, as disclosed by the record, are as follows: The respondent filed her bill for a divorce against the respondent Henry T. Ray, in said district court, on the fifth day of February, 1873, and for the custody of the children, and the division of the common property. On the third day of May following, a decree was rendered, dissolving the bonds of matrimony, and adjudging that the respondent have the care and custody of the children, and that all the property (excepting a certain claim) owned and held by the parties on the thirty-first day of January, or the first day of February, 1873, the day of the separation, be divided between them. On the thirty-first day of January, 1873, the day of the separation, the parties owned and held among other things, the following property, viz., two hundred and eighty-eight head of cattle, which with the natural increase, the respondent claimed, was to be divided between herself and her husband.

The bill which is the foundation of this action, alleges that the defendant, Ray, conspiring and confederating with defendant, Dangel, did on the fifth of February, 1873, the day the action for a divorce was commenced, make a pretended sale of two hundred and fifty-one head of said cattle, with the intent and purpose of defeating any judgment that might be rendered in said action for divorce, and hiding and covering up the property of said defendant, Ray, so that no decree for the division of the same can be enforced. That Dangel was fully aware at the time that a separation had taken place, and that a suit for a divorce had been, or

was about to be commenced, and of plaintiff's right to, and interest in, and part ownership of the property, and that all of said facts had been presented to said court in said action for divorce, and the intent to defraud plaintiff by said pretended sale, fully and plainly appearing, the said court in its decision and judgment, and decree, set aside the pretended sale as fraudulent, and decreed a division of all the property fraudulently claimed by Dangel, being the identical property owned and possessed by plaintiff and defendant Ray on the thirty-first day of January, 1873, and that by said court the title to said property was fully and completely adjudicated and determined, and can not be changed except by a reversal or modification of said decree.

The bill further alleges that a stay of proceedings was allowed in said action, that is, until the sixth day of May, and on the application made by the plaintiff, a temporary restraining order was granted, restraining the defendants, Ray and Dangel, from disposing of, and removing the said property, and they were further ordered to show cause why said restraining order should not be made absolute, and a receiver appointed to take possession thereof. That due service of the restraining orders was made on Ray and Dangel, who both appeared and answered, but failing to show sufficient cause, the order was made absolute, and a receiver was appointed on the thirteenth day of May, and defendants were ordered to deliver possession of the property to the receiver, who was authorized to divide it between the plaintiff and defendant Ray, on the expiration of the stay of proceedings. That through threats and misrepresentations of defendants, no person could be got to take the position of receiver, and give bonds as required, Dangel threatening to sue and resist the receiver.

That on the twenty-fourth of May, the time of the stay of proceedings having expired, on application of plaintiff, and in pursuance of said decree, and to enforce the same, it was ordered by the judge of said court that the clerk issue final process to the sheriff to enforce the decree as to the division of the property, directing the sheriff to seize and take the same, in whosesoever hands or possession it

might be found, and to collect and divide the same into two equal parts, delivering one moiety or part to plaintiff, and one moiety or part to defendant, Ray; and to make all the costs of said action and all accruing costs out of the moiety or part of said defendant Ray. That said final process was placed in the hands of the sheriff, who is now engaged in executing the process, and has taken possession of all the property that could be found, and within a day or two be prepared to divide the same as directed. That the said Dangel was in said final process and order restrained from interfering or hindering the sheriff in executing said process, or interfering with said property.

That said order was duly served on said Dangel; but, disregarding the order of the judge, he did, on the twenty-eighth of May, demand, in writing, the redelivery of all said two hundred and fifty-one head of cattle to him by the sheriff, claiming the same by virtue of the said pretended and fraudulent sale of February 5, 1873, which had been set aside and annulled by the court; and that the said sheriff, refusing to redeliver the same, and continuing to obey the order of the judge in the premises, the said Dangel applied to the judge of said court for permission to bring suit against said sheriff for the possession of said two hundred and fifty-one head of cattle; and the title to the same having already been determined, the said Dangel was not permitted to bring such suit, nor interfere with the enforcement of the decree in said action.

That Dangel, disregarding and disobeying the restraining order before that time issued, did, on or about the twenty-fourth of May, proceed to brand the calves—the natural increase of said cattle—or the greater part of them, with the letters "F. D.," and has changed and altered the appearance of the same, with the intent to deprive and defraud the respondent of her interest therein, and would have branded all of them, unless prevented by the sheriff.

That ever since the thirty-first day of January, the day of the separation, the defendants have conspired and combined together, and planned to defeat and deprive plaintiff of her interest in said property, and that since the said decree,

they continue, and are continuing to conspire, plot, and plan, for the purpose of defeating said decree and depriving plaintiff of her interest in said property, and that they have done much, and are continuing in their acts to interfere with the process of the court, and to thwart plaintiff of her just rights under said decree. That defendants found all their acts and claims upon the said pretended and fraudlent sale of February 5, which has been· disposed of by the court. That they threaten to destroy the property before plaintiff shall have any benefit therefrom. That they threaten to kill and murder any person plaintiff puts in charge of the cattle, and to take forcible possession of the same from plaintiff, or her agents, after they are placed in her possession by the sheriff.

That if they can not obtain possession of them by force, the said Dangel, instigated by Ray, intends to bring suit against plaintiff, and replevy the same from her; claiming the same under said fraudulent sale of February 5, which has already been set aside; the purpose being to prevent plaintiff from having and enjoying the property decreed by the court to belong to her, and to worry her, and compel her to accept a compensation, and to take the sum only of eight hundred· dollars for all her interest in said property. That they brag and threaten, unless she takes the said sum of eight hundred dollars she shall never receive any benefit whatever from said property. She alleges she is wholly without means or property whatsoever, except her interest in said property (and other property, describing it), and if said Dangel be permitted or allowed to commence and prosecute actions against her for the possession of one half of said two hundred and fifty head of cattle and to retain possession of the other half now about to be divided in accordance with the decree of the court, she will receive great and irreparable injury and damage, and the decree and judgment of the court entered in said action will be rendered null and ineffectual as to the division of the property, and the said Ray and Dangel will have succeeded in accomplishing their designs and intentions in defrauding her of all her interest in

said property, and rendering nugatory the decree and judgment of the court.

That she desires the said judgment and decree to be forthwith carried into execution, and is advised the same can not be done without the assistance of this court, there being no remedy at law in the premises, and inasmuch as the title to and interest of all concerned in and to said property, has been determined and adjudicated in said action, and the said Dangel has and can have no interest therein by virtue of said pretended sale, so long as the said decree stands.

To the end, therefore, that justice and equity may be done, and that the conspiring and confederating of the defendants may cease, and they be prevented from further interfering with or hindering the enforcement of the said decree, and that the same may be forthwith carried specifically into execution, and the defendants ordered to do and concur in all necessary acts for the purpose, and that what has already been done may be confirmed.

Plaintiff prays that defendants, or either of them, be restrained from commencing any suit or action of any kind against her for the recovery of the possession of any of said property after the same shall be delivered to plaintiff by the sheriff, or from branding or marking any of said cattle and calves, and from interfering or meddling with said property, or any of it, and from trying to prevent the sheriff from fully executing the final process, and from making the costs and accruing costs out of the moiety or part that may be allotted to the defendant Ray, or from doing anything to prevent the complete carrying into execution the order in said action, and for such other and further relief, etc.

To the bill the defendants put in their separate general demurrer, " that the plaintiff had not by her bill made or stated such a case as entitles her in a court of equity to any relief against either of them." The court overruled the demurrers, and on a hearing of the case adjudged:

1. That all sales, transfers, deeds, bills of sale, or agreements, in regard to the property made since the thirty-first

day of January, 1873, the day of the separation between the plaintiff and defendant Ray, by defendant Ray to defendant Dangel, be and the same are set aside, and held to be null and void and of no effect whatever.

2. That the plaintiff on the thirty-first day of January, 1873, owned and was entitled to one half of the property. That on that day the same was owned by plaintiff and defendant Ray in common, and held by plaintiff and defendant Ray, and that any sale made since that day of plaintiff's half of said property by defendant Ray to defendant Dangel, can not affect such title.

3. That all of said property be equally divided between plaintiff and defendant Ray, by the sheriff delivering one moiety to plaintiff and one moiety to defendant Ray.

4. That the division heretofore made by the sheriff under the process of this court, issued in the cause of Margaret Ray and Henry T. Ray by the direction of the judge of this court, be and the same is hereby confirmed and considered valid and effective. And the title to the moiety so delivered to the plaintiff under said process on the day of June, 1873, is confirmed, and the same is fully and completely vested in the plaintiff.

5. That the said Dangel be and he is restrained from interfering with the sheriff in dividing the property, and from suing him for what he has done in executing the process of this court in said action of *Ray* v. *Ray*, in seizing said property and dividing it as ordered, and in levying upon the part allotted to said Ray and selling the same to pay the costs in said action, and the costs in making said division."

The district court, after several findings of fact in the case, deduced the following propositions of law, viz.:

1. That the plaintiff, from the moment of her separation on the thirty-first day of January last, became the individual and separate owner of an undivided one half of all the said common property, and that the defendant Ray had no right to sell thereafter any of said property without the consent of the plaintiff.

2. That any sale of any of the said property on the thirty-first day of January last by defendant Ray to defendant

Dangel, who had notice and knowledge of the separation and the intended divorce, was in violation of the law and the rights of the plaintiff, and is therefore void and of no effect.

3. That the plaintiff is the owner of the property delivered to her by the sheriff of Ada county, in the division made under the direction of the court in carrying out said decree in the case of *Ray* v. *Ray*, and that neither one of said defendants has any right, title, or interest in or to said property, or any part thereof, delivered by the said sheriff to plaintiff in executing the final process in said cause.

4. That the sheriff, in executing the process of this court, had the right to seize and divide said property and its natural increase, and that he did not exceed his authority, and is not liable to either of defendants.

5. That plaintiff is entitled to a decree, setting aside all sales made by defendant Ray to defendant Dangel, and confirming what has been done in said action of *Ray* v. *Ray*, and confirming the title of plaintiff to the property delivered to her by the sheriff in making the division, and restraining said defendant, Dangel, against suing the sheriff for executing said process, and making said division, and from interfering in the further division of said property and its natural increase; and that said plaintiff is also entitled to a decree dividing the said real estate, and all other property undivided.

6. That the plaintiff is entitled to a judgment for costs against said defendants.

To these findings of law, the defendants duly excepted, and entered their motion for a new trial, which motion was overruled, and exceptions duly taken thereto.

It is an admitted principle, that a court of equity will not take cognizance of a case which has been already determined by a court having jurisdiction of the subject-matter and of the parties, and where the parties to such suit are amenable to any process which may be ordered out to carry such judicial determination into execution. This general principle has its exceptions, but the case at bar does not come within any of them.

The appellant, Ray, was a party defendant in the suit brought by respondent for a divorce and a division of the common property. A decree was rendered by the court in that suit for a divorce, and also for a division of the common property, embracing the property in question; and final process was issued under the direction of the court, to carry the decree into execution. This judgment was final and conclusive upon the appellant, Ray, and embraced every material thing that is set up by the respondent in her bill in this suit as grounds for equitable relief. If the appellant, Ray, alone, or by collusion with Dangel, or any other person, had sought, by any act or threat of his, to hinder, delay, or defeat the execution of the final process in that suit, as alleged in the bill, or attempted to deprive respondent of any right or interest in and to the property to which she was entitled by the decree, he could have been dealt with summarily, by proceedings for contempt; and such summary dealings would have been as effectual to secure and protect the rights of the respondent, as any judgment or decree that could be rendered against him in her favor in this action.

It will be observed that the bill does not show that Ray was beyond the jurisdiction of the court, nor the reach of its process, and hence there was no necessity for bringing a new action against him to enforce the decree. This proceeding, therefore, for enforcing the decree in that case as to him, was entirely unnecessary, and the district court should not have entertained jurisdiction of it, but should have sustained his demurrer and dismissed the bill. This principle of law is clearly deducible from the opinion of the supreme court of the United States, in the case of *Barber* v. *Barber*, 21 How. 582, in which the court says: "That when a court of competent jurisdiction over the subject-matter and the parties decrees a divorce and alimony to the wife as its incident, and is unable of itself to enforce the decree summarily upon the husband, courts of equity will interfere to prevent the decree from being defeated by fraud. The interference, however, is limited to cases in which alimony has been decreed, then only to the extent of what

is due, and always to cases in which no appeal is pending from the decree for the divorce and alimony." .

In that case a decree for divorce *a mensa et thoro*, and for alimony, had been rendered by a court of competent jurisdiction in the state of New York, and after the decree was rendered against the husband, he removed to the state of Wisconsin, leaving the alimony unpaid. To enforce the collection of the alimony, it became necessary to bring suit in the state of Wisconsin for its recovery, and this because the summary process of the court in which the alimony was awarded could not reach the husband. If it could be admitted that the decree in the case of *Ray* v. *Ray*, as to respondent's right to a portion of the property alleged to have been purchased by Dangel on the thirty-first of January from Ray, concluded him, the same principle of law would apply with equal force, and no suit against him would, therefore, have been necessary to enforce it, and it would be equally applicable, if Dangel, without any claim of right to the property in controversy, and standing equally indifferent between the parties so far as his own interests were concerned, had conspired with Ray, or with others, to defeat the execution of the decree, and thereby attempted to defraud the respondent of her rights established by it; for it is not to be doubted that he would have been equally guilty of a contempt of the lawful authority of the court, and as much amenable for such contempt as Ray himself. This not being the case, however, we must proceed to dispose of the question as to him, upon different principles, and for different reasons.

The bill in this case, as its title imports, was filed "to carry a decree into execution," and not for the purposes of setting aside the sale of the property by Ray to Dangel on the ground of fraud upon the rights of the respondent. Its theory is, that by the decree in the divorce suit the sale of the property was declared to be null and void, and that Dangel took nothing by his purchase; that on the separation of respondent from her husband on the thirty-first of January, her share of the common property became absolutely vested in her; and that any sale thereafter by the hus-

band was a nullity, and conveyed no title to Dangel; and that any attempt by him to recover or retain the possession of it after the decree, was illegal, and should be restrained by the court, and that this could only be done by instituting another suit on the equity side of the court, making him a party defendant therein.

This theory the district court accepted as the true one, and decreed accordingly. It has been shown, that if the former decree setting aside the sale was binding on Dangel, and that his right to the property in question had been determined by it, no proceeding by a new or original action would have been necessary, for the reason that he could be dealt with in a more summary manner if he had attempted to hinder, delay, or defeat the execution thereof, or to deprive respondent of any rights which had been secured by it. But he was not a party to the proceedings in the divorce suit, nor to the action which determined that he took no title by his purchase from Ray, and as a consequence, he had the undoubted right to assert his claims to it, by refusing to surrender it to the respondent, or the receiver appointed by the court to take possession and make division of it, or by instituting such legal proceedings as were necessary to establish his title thereto.

So far as the decree seeks to set aside the sale on the ground that it was a fraud upon the equities of the respondent, it was a nullity as to Dangel, and no order of the court restraining or prohibiting him from taking any steps to establish his claim to the property was of any validity. This is a principle of law which addresses itself to the commonest understanding, and so well established by authority as to need no extended comment. (*Hahn* v. *Kelly*, 34 Cal. 402.)

If the law were held to be otherwise, and the former decree were to be considered as to Dangel's rights, as *res judicata*, it would in effect deprive him of his property without due process of law, and be a violation of the constitution of the United States. It is an axiom, that no man shall be deprived of his property without the institution of a suit against him conducted according to the prescribed forms

and solemnities for ascertaining the title thereto. (2 Cooley on the Const., secs. 1945–1951.) It seems in this case, that the bill was framed for the purpose not only of carrying into execution the former decree, but also of making so much of it as adjudged Dangel's title to the property a nullity in a proceeding to which he was not a party, valid and binding upon him; in other words, it sought, by making him a party to this proceeding, to give validity to that which by the former decree was of no validity so far as it affected Dangel's rights.

It may be admitted for the purposes of the argument that if the respondent had brought her action against Dangel with the object of setting aside the sale to him on the ground of fraud, and with a view to the assertion of her right to one half of the cattle on a division of the property between herself and Ray under the direction of the court, and not for the purpose of establishing or confirming the former decree, it could have been maintained. In such a proceeding the *bona fides* of the transaction could have been attacked and the sale set aside if found to be in fraud of her rights and her title to one half of the property established. This, however, she has not seen fit to do; but, relying upon the adjudication in the divorce suit, which held that the sale was a fraudulent one, she now seeks to bind Dangel by a confirmatory judgment, without any further inquiry as to the character of the transaction between the appellants Ray and Dangel.

It is true, the record shows that full inquiry was made and proofs received as to the *bona fides* of the sale and a judgment had thereon, but the bill in its scope and aim laid no foundation for any such inquiry nor for any adjudication of that character, and hence the judgment, not being supported by the case made by the bill, was erroneous.

The case might be disposed of without further inquiry on the above grounds, but, as the question of the right of the husband to dispose of the community property before a legal separation between him and his wife took place may arise hereafter, it is deemed important to consider and settle it here.

37

By the common law it is said that by marriage, the husband and wife become one person in law; that is, the very being or legal existence of the woman is suspended during the marriage, or at least is incorporated or consolidated into that of the husband, under whose wing and protection she performs everything. Upon this principle of union in husband and wife depend almost all the rights, duties, and disabilities that either of them acquire by the marriage. For this reason, a man can not grant anything to his wife, nor enter into a covenant with her; for the grant would be to suppose her separate existence, and to covenant with her would be only to covenant with himself; and therefore it is generally true, that all compacts made between husband and wife when single, are avoided by the intermarriage. (Co. Lit. 112; 1 Bl. Com. 442.) "The legal effects of marriage are generally deducible from the principle of the common law, by which the husband and wife are regarded as one person, and her legal existence and authority in a degree lost and suspended during the existence of the matrimonial union." 2 Kent's Com. 128.

Thus it will be seen that by the common law, the husband had the complete control of all the property owned and possessed by either the husband and wife during coverture, whether acquired before or after the marriage, and could dispose of it at his pleasure, without the consent or even against the wishes of the wife, and no fraud could be imputable to him for so doing.

It would be useless to trace the different stages by which the rights, duties, and privileges of married women have been enlarged under the spirit of a more enlightened age, by statutory enactments, and we will therefore content ourselves with a reference to so much of our statute as can be supposed to have any bearing upon the case before us.

By the provisions of section 2, chapter 9, of the laws of the fourth session, all property acquired after the marriage by either husband or wife, except such property as may be acquired by gift, bequest, devise, or descent, shall be common property. By section 9, "the husband shall have the entire management and control of the common property,

with like absolute power of disposition as of his own separate estate, and the rents and profits of the separate estate of either husband or wife shall be deemed common property, unless in the case of the separate property of the wife, it shall be provided by the terms of the instrument whereby such property may have been bequeathed, devised, or given to her, that the rents and profits thereof shall be applied to her sole and separate use, in which case the entire management and disposal of the rents and profits of such property shall belong to the wife, and shall not be liable for the debts of the husband."

It will be unnecessary to inquire whether this absolute power of disposition by the husband, of the common property, which the law gives him, goes to the extent that he may dispose of it in fraud of his wife's rights or interests; or, in other words, whether, as at common law, she has no rights or interests of which she can be defrauded by any such disposition, because the question does not arise in this case.

The point presented for our consideration is simply this: Was the sale of the property by Ray to Dangel, after the thirty-first day of January, the day of the voluntary separation by his wife, and before the legal separation was effected in the divorce suit, a valid sale, or was it a fraud *per se* upon the wife, who had or was about to institute a suit for a divorce and a division of the common property? The answer to this must be, that the sale was a valid one, so far as it is necessary to consider it in this case.

The law gave him the absolute right of disposal, as much so as if it had been his own separate estate. (*Van Merun* v. *Johnson*, 15 Cal. 311.) The mere act of voluntary separation by the wife, even with the expressed intention of bringing her suit for a division of the property, did not of itself change the character of the community property, and rest it in herself in her individual right. Her husband retained the same absolute control and power of disposition over it, under such circumstances, as he possessed before the separation, and any sale made by him to another in good faith, and for an adequate consideration, was as valid in

law, as though no separation had taken place. (*Lord* v. *Hough*, 43 Cal. 585.) The sale, under such circumstances, was as much for her benefit as for her husband's. The consideration received became a substitute for the property sold, as common property, and inured equally to the benefit of the husband and wife.

But the decree went to the extent that the sale was a nullity because the character of the property was changed, by the voluntary separation of the wife from her husband, on the thirty-first day of January, and by such separation it thereafter becomes her separate property, over which her husband had no longer any control, and by the sale of which he conveyed no title to Dangel. Neither the original bill nor the decree attacks the *bona fides* of the sale and purchase on ground of inadequacy or want of consideration, and even if it was so considered by the court, the sale could not be set aside on the ground of fraud on the part of Dangel, because he was not made a party to the action.

There is another point to be considered, viz.: The decree in the divorce suit adjudging the property in controversy to have been fraudulently purchased by Dangel, and as a consequence, that he took no title to it under the sale by Ray, being a nullity as to him. Can this proceeding, which seeks to confirm that decree and to carry it into execution, be upheld? A moment's consideration will suggest the answer.

Even the legislature has no power to make a law valid by a subsequent enactment, which it had no authority in the first instance to pass. Lacking the authority to pass the law, which it seeks to validate, it is wanting in power to vitalize and give effect to the void enactment. The same principle holds good in relation to the authority of courts. If it were otherwise, the rights of person and property would be without the protection of the law; a judgment might be rendered which would invade a man's most sacred rights, without giving him a hearing, and all that it would be necessary to do to render it valid would be to bring another action to confirm and make it good. This would be transcending the limits prescribed to legislative authority, and would, in effect, place the judicial above the legislative

department in its power to render valid that which it had no authority to do in the first instance.

The principles of law deducible from this case are briefly as follows:

1. An action will not lie in a court of equity to enforce a decree against a person not a party to such decree.

2. Nor will such action lie against one who was a party to such decree, where he remains within the jurisdiction, and is amenable to the process of the court which rendered the decree.

3. There is no power in a court of equity to confirm or enforce a void judgment by a subsequent proceeding instituted for the purpose.

4. A husband has the absolute power to dispose of the common property of himself and wife, to the extent, and in the same manner, as he has of his separate property, until a legal separation has been effected by a court of competent jurisdiction, and a division made under the direction of such court.

5. A person can not be prohibited from bringing an action to test his right to property, by a restraining order of a court in which such right has been adjudged against him in an action to which he was not a party.

The court having erred in overruling the general demurrer of appellants, the judgment must be reversed and the bill dismissed at the costs of respondent, and the appellant Dangel be permitted to proceed for the recovery of the property in controversy.