(No. 6402.  October 31, 1936.)

VERNON M. BENSON, Plaintiff, v. THE DISTRICT COURT OF THE FIFTH JUDICIAL DISTRICT OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF BANNOCK, and HONORABLE ISAAC McDOUGALL, District Judge, Defendants.

[62 Pac. (2d) 108.]

Anderson, Bowen and Anderson, for Plaintiff.

B. W. Davis and C. M. Jeffery, for Defendants.

AILSHIE, J.—In this case on application of plaintiff an alternative writ of prohibition was issued directed to the district court of the fifth judicial district and the judge thereof, Honorable Isaac McDougall, to show cause why a peremptory writ of prohibition should not issue against the court, proceeding to enforce and carry out the provisions of the following order made and entered by Judge McDougall on the 3d day of July, 1936, in the case then pending before the court, entitled *"Nancy Benson v. Vernon M. Benson"*:

"This matter came on for hearing upon an order directed to the defendant to show cause, dated July 16th, 1936, upon the 17th day of July, 1936, the plaintiff appearing in person and by counsel C. M. Jeffery, Esquire, and the defendant

appearing in person and by counsel Anderson, Bowen & Anderson. Upon motion of the defendant the hearing was postponed until Monday, July 20th, 1936, at which time the parties appeared in person and by their respective counsel, and again upon motion of counsel for the defendant the hearing was continued until Tuesday, July 21st, at ten o'clock A. M., at which time the matter was presented to the court and argued by counsel upon the respective affidavits of the parties, and the records and files of the case, and by the court taken under advisement.

"The court, being fully advised in the premises, finds:

(1) That all property involved in this controversy is community property of the plaintiff and defendant.

(2) That among said property is a hotel business known as the Benson Hotel, located at the corner of Lewis and South Main Streets in the City of Pocatello, Bannock County, Idaho;

(3) That said hotel business above referred to was acquired by the plaintiff and defendant on or about the first day of September, 1933, and that since said time the plaintiff has had full charge of said hotel and full charge of the operation thereof in every detail; that the defendant has been in charge of the buffet in connection with said hotel, but that during the full time that the parties have operated said hotel, namely, from the 1st day of September, 1933, up to the present time, the defendant has never assumed a regular shift in the hotel, and has never taken any part whatsoever in connection with the management of the hotel, and that the defendant has no knowledge whatsoever concerning the management of said hotel, and has in no manner whatsoever assisted in the management and control thereof from time of purchase of said hotel; that plaintiff by reason of her interest and attention to business has been able to pay out practically all the purchase price of said hotel; that she has exercised full control over all the employees connected with said hotel, and that the plaintiff has supplied all groceries, paid all living expenses, including the laundry and cleaning service for the defendant, and that defendant has been absent from said hotel a greater portion of the time; and that for the defendant to take full charge of said hotel would

greatly jeopardize not only the rights of the plaintiff but also the rights of the defendant.

"The Court Further Finds: That it is to the best interests of both the plaintiff and the defendant for the purpose of conserving the assets of the community that the said hotel be run, operated and conducted by the plaintiff until further order of the court, in the manner in which it has been conducted in the past by the plaintiff prior to the commencement of this litigation.

"Wherefore, it is ordered:

(1) That the plaintiff continue the management and operation of the hotel business in the manner in which it has been conducted by her prior to the commencement of this litigation.

(2) That the defendant be, and he is hereby, restrained, until further order of the court, from interfering with the plaintiff in the management and conducting of said hotel business.

(3) It is further ordered that the plaintiff make a written accounting to the court on or before August 10, 1936, of all receipts and disbursements of said hotel business from the time of the filing of this action until said August 10th.

(4) It is further ordered that the plaintiff at all times keep the books and records of said hotel business open to the inspection of the defendant, or some accountant to be selected by the defendant, for the purpose of obtaining an audit and such accounting as the defendant may desire.

(5) It is further ordered that the plaintiff be restrained from interfering with the business conducted and operated by the defendant known as the 'Buffet', and that the management and control of said business is left with the defendant until further order of the court.

(6) It is further ordered that the defendant file a written account of his receipts and disbursements in the management of said business from the time of the commencement of this litigation until August 10th, 1936.

Dated: This the 30th day of July, 1936.

(Signed) ISAAC McDOUGALL, District Judge."

A demurrer has been filed to the petition and a motion to quash the writ has also been filed. The question here arises

on the sufficiency of the petition to justify the issuance of the writ.

Nancy Benson filed her complaint in the district court against the defendant Vernon M. Benson (who is plaintiff here), alleging extreme cruelty and describing certain property, alleged and admitted to be community property, and praying for a decree of divorce and decree settling her property rights. At the same time an application was made for allowance of suit money and attorney's fees. After hearing on the application for suit money and attorney's fees the court entered an order requiring defendant to pay to the plaintiff a certain amount, which payment was thereafter made. Upon making of this payment the defendant served notice on plaintiff's attorneys that he would thereafter, and on the 17th day of July, 1936,

"assert his rights under the law and will take complete management and control of all of the community property, and all of the property involved in this action; and you will please advise your client that she is not to have any further voice in or connection with the management of the Benson Hotel, or any of the other property until the further orders of the court herein."

On receipt of this notice Mrs. Benson's attorneys immediately made application to the district court and the judge thereof for an order restraining defendant from interfering with plaintiff's management and operation of the Benson Hotel during the pendency of the action, and to authorize her to continue the management, control and operation of the hotel until the final termination of the case, the same as she had done in the past. This application was accompanied by an affidavit of Mrs. Benson, setting forth the facts as stated by the trial judge in the foregoing findings and order. Upon the hearing of this application the defendant declined to introduce any evidence or controvert any of the facts set up in plaintiff's affidavit and rested his defense on the contention that, under the provisions of the statute, sec. 31–913, I. C. A.:

"The husband has the management and control of the community property, except the earnings of the wife for her

personal services and the rents and profits of her separate estate. But he can not sell, convey or encumber the community real estate unless the wife join with him in executing and acknowledging the deed or other instrument of conveyance, by which the real estate is sold, conveyed or encumbered'';

and that the court was without jurisdiction to make any order with reference to the custody, management or control of the community property until such time as a decree of divorce is entered.

On the other hand, it is the contention of counsel for Mrs. Benson that the court had jurisdiction of the parties through their personal appearance in the case, and that it had jurisdiction of the subject matter, that is, of the community property belonging to the parties litigant; and that it likewise had jurisdiction of the subject of divorce and disposition of community property and the homestead of the parties; and that, while he might commit an error in the exercise of that jurisdiction, he had the jurisdiction to do so. (*Utah Assn. of Credit Men v. Budge*, 16 Ida. 751, 756, 102 Pac. 390, 691; *Baldwin v. Anderson*, 51 Ida. 614, 617, 8 Pac. (2d) 461; *Beus v. Terrell*, 46 Ida. 635, 640, 269 Pac. 593; *Vaught v. District Court*, 46 Ida. 642, 645, 269 Pac. 595.)

It should be remembered that the trial court did not assume to order any of the property sold or disposed of, or to enter any order affecting it, other than as to its management, control and operation; and the question here presented is purely one of the jurisdiction of the court to make orders with reference to the protection, preservation, management and custody of the community property belonging to the parties, *pending the litigation*. As we understand the statute, this subject is anticipated and fully covered by sec. 31–715, I. C. A., which reads as follows:

"Exclusive original jurisdiction of all actions and proceedings under this chapter is in the district court, and the judge thereof at chambers may make all necessary orders for temporary alimony and support, and the expenses of the action *and the custody of children and property during the pendency of the action.*" (Italics ours.)

It will be seen that this statute confers, on the district court, jurisdiction of all actions and proceedings under "this chapter"; and that this is chapter 7, Title 31, and is devoted to the subject, "Divorce Actions."

Section 31-712 prescribes the manner and method for disposition of the community property and the homestead, where a decree of divorce is granted; and sec. 31-713 provides that:

"The court, in rendering a decree of divorce, must make such order for the disposition of the community property, and of the homestead as in this chapter provided, and, whenever necessary for that purpose, may order a partition or sale of the property and a division or other disposition of the proceeds."

Under these provisions of the statute, the court was clearly vested with jurisdiction to hear and determine the marital status and to dissolve the same; and the commencement of the action at once subjected the community property and the homestead to the jurisdiction of the same court that acquired jurisdiction of the parties and the marital status. In order to make sure, however, of the jurisdiction of the court "during the pendency of the action" to preserve the property, the legislature very wisely provided that the judge of the court "at chambers may make all necessary orders for . . . . the *custody of children and property.*" This was undoubtedly done to obviate any question of doubt about the trial court or judge thereof having power to provide for the care and custody of *the children and of the property* during the pendency of the action and until final decree might be made. It enables the court to preserve the property from dissipation, removal or waste during the pendency and progress of the divorce action. This chapter of our Code (chap. 7, Title 31) was taken literally from the California Code, except the last section (31-715), which is entirely new and is not to be found in the California Code. For this latter reason California authorities are of no special value in the consideration of the particular question here presented.

As we understand the plaintiff, he urges his application here for writ of prohibition squarely upon the proposition that, under the statute, sec. 31-913, he is vested

with the absolute right to the "management and control of the community property" during the existence of the marital relation and until the same is dissolved by regular decree of a court of competent jurisdiction; and that such statutory right cannot be suspended or taken away from him by any order or judgment of court until the marital relation is dissolved. It is consequently asserted that the trial court was without jurisdiction to make the order here involved.

Under the statute above cited, the district court has complete and exclusive original jurisdiction "of all actions and proceedings" concerning divorce, disposition of community property and the homestead. The commencement and pendency of an action for divorce does not of itself suspend the husband's right of control, custody and management of the community property. Unless interrupted by an order of court, his right to manage, control and dispose of the community property continues the same after the commencement of a divorce action as prior thereto. The commencement of the action is not "taking the property into the custody of the court." Reference to the authorities will at once disclose that there is very substantial difference between property being subject to the jurisdiction of a court, and the same property being in custody of the law or the court. Under our statute, the commencement of the action gives the court jurisdiction of the "community property and of the homestead" (sec. 31–713), which, the statute says, the court "*must*" dispose of by final decree in the case. General jurisdiction is conferred by the statute, and the specific property on which the jurisdiction is to operate is that described in the pleadings.

The power conferred by the statute to dispose of the community property and the homestead, upon the entry of final decree, could readily be thwarted and rendered of no avail by a crafty husband, and he might sell and dispose of it all during the pendency of the divorce litigation, so that when final decree might be entered there would be no available property for it to operate on. It was evidently for this purpose that the legislature specifically authorized the judge at chambers to make and enter necessary orders touching the

custody of the property, as well as of the children, during the pendency of the action. So far as we are aware, it has been the uniform practice of the district courts of this state to enter restraining orders for the protection of the property, enjoining waste or disposal of the same by the husband, ever since the adoption of the constitution. If, however, the contention of plaintiff is correct, that the husband has an absolute right of management, control and disposition of the community property until the marital relation is terminated, then, of course, the trial court would have no right to restrain or enjoin him from selling, or mismanaging the property.

■ In support of the contention that, until a decree of divorce is granted "the court is utterly without any power or authority whatever to make any disposition of the community property," counsel cite *Ray v. Ray,* 1 Ida. 566, and *Bedal v. Sake,* 10 Ida. 270, 77 Pac. 638, 66 L. R. A. 60. In the latter case this court said:

"The statute of this state only gives the court power to dispose of community property after the divorce is granted; indeed it acquires its power from this source alone. The husband controls the community property up until the very hour of the dissolution of the marriage relations."

The statement, that "the husband controls the community property up until the very hour of the dissolution of the marriage relations," is as true today as when *Bedal v. Sake* was written; *provided,* of course, that the court does not, in the meanwhile, exercise the power granted by sec. 31–715, I. C. A., to make any necessary order for the custody of the community property, pending the action. In the Bedal-Sake case no such order was ever made and, indeed, the court that heard the divorce action never made any order whatsoever in reference to the disposition of the community property. It is proper, however, to observe here that the Bedal-Sake case has been overruled in part. (See *Peterson v. Peterson,* 35 Ida. 470, 207 Pac. 425.)

Special complaint is made that, whereas the statute authorizes the husband to exercise "management and control of the community property," the court here reversed the order and authorized the *wife* to remain in custody and

exercise control and management over the hotel property; and that this exercise of authority was the assumption of unauthorized jurisdiction by the court over such community property. The statute (sec. 31–715) does not limit the court's jurisdiction, in exercising and directing custody of property during the pendency of the action, nor does it specify any particular person to whom the custody may be awarded; nor does it mention anyone or class to whom it shall not be awarded. For these reasons, it necessarily follows that the jurisdiction in this respect is not dependent on the manner in which it is exercised, or that an error in judgment or abuse of discretion (if such appeared) would oust or limit the jurisdiction.

The power the court has exercised here is not the power of ''disposition'' conferred by sec. 31–713, but is rather the power to exercise ''custody'' over the property pending the action, as conferred by sec. 31–715.

What we have said has been directed to the issue of *jurisdiction* which the motion and demurrer here raise and has no reference to the subject of any error in the exercise of the power conferred.

The alternative writ is quashed and the petition is dismissed.

Givens, C. J., and Morgan and Holden, JJ., concur.