493 P.2d 127

Dorothy SAXON, Petitioner,

v.

The Honorable Marilyn RIDDEL, Judge of the Superior Court, Maricopa County, Respondent,

and

I. SAXON, Real Party in Interest,

and

Mobile Home Communities, Intervenor.

No. 1 CA–CIV 1898.

Court of Appeals of Arizona, Division 1, Department B.

Feb. 2, 1972.

William J. Samuels, Phoenix, for petitioner.

Kenneth L. Abrams, Phoenix, for respondent and real party in interest.

Fennemore, Craig, von Ammon & Udall, by Robert H. Carlyn, Phoenix, for intervenor.

JACOBSON, Judge.

This special action presents the question of the trial court's jurisdiction in a divorce action order to show cause to decree the sale of co-owned real property prior to a final determination of the merits of the divorce action.

Early in 1971, the petitioner, Dorothy Saxon, filed an action for divorce against the real party in interest, I. Saxon. Subsequent to the filing of this divorce action and pursuant to an order to show cause directed against Mr. Saxon, Mr. Saxon was enjoined from disposing of any of the community assets of the parties during the pendency of the action. Because of various attempts at reconciliation and because of the petition for conciliation filed by Mr. Saxon, this divorce action has not been terminated. However, a trial on the merits has been set for February 7, 1972.

It appears from the scanty record before us that approximately six or seven years ago and during the term of the marriage, the parties acquired a mobile home park known as Catalina Mobile Home Park. Again, from the record before this court, the exact manner of acquisition of the park is not clear. However, it does appear that this mobile home park was actually acquired by two separate deeds and was in turn treated by the parties as three distinct parcels. It further appears that Parcel 1 of this park, consisting of approximately 15 acres, was deeded to Mr. and Mrs. Saxon and there is apparently no dispute between the parties that Mrs. Saxon has an interest in this parcel, but whether that interest is one of community or joint tenancy is not clear from the record.

As to Parcels 2 and 3 consisting of seven acres and fifteen acres respectively, the record indicates that Mr. Saxon's father may have advanced the purchase price for these parcels and he claims an interest in this portion of the park. One of the questions raised in the trial court concerns the validity of the recorded deed from Mr. and Mrs. Saxon as grantors to Mr. Saxon's father as grantee for Parcels 2 and 3— Mrs. Saxon claiming that the signature appearing on that deed is not hers. Be that as it may, it is clear that at this point in time, Mrs. Saxon claims an ownership interest in the entire mobile home park and that while there may have been a purported adjudication of a portion of this claim, she contends that the nature and extent of this claimed interest has not been fully adjudicated.

During the summer of 1971, Mr. Saxon entered into negotiations with intervenor, Mobile Home Communities, for the sale of the entire mobile home park. These negotiations culminated in an agreement of sale and escrow instructions whereby Mr. Saxon and his father agreed to sell the entire mobile home park to Mobile Home Communities for the sum of $1,600,000.

The sale was to consist of a $600,000 cash down payment and the assumption of an existing mortgage in the sum of $1,000,-000. The agreement for sale was presented to Mrs. Saxon who refused to execute the agreement and refused to sell her interest in the park.

After this refusal, Mr. Saxon filed in the pending divorce action an order to show cause directed to Mrs. Saxon, requiring her to appear and show cause why the mobile home park should not be sold and why she should not be ordered to join in the sale. This order to show cause was set for hearing on December 28, 1971, before respondent, The Honorable Marilyn Riddel, Judge of the Superior Court, Maricopa County.

Evidence elicited at this hearing indicated that the offer of Mobile Home Communities was an advantageous one; that this sale would generate more cash for the parties than any other offer; that there were certain tax advantages if the sale was completed in 1971 and that if the sale did not go through Mr. Saxon and possibly Mrs. Saxon were faced with the threat of litigation by Mobile Home Communities in which expected damages in the sum of $400,000 would be sought. On the other hand, Mrs. Saxon felt other offers of sale in the sum of $1,800,000 on time payments were more advantageous to her in the long run and that she did not want to sell her interest in the property.

Following the hearing on the order to show cause, Judge Riddel on December 31, 1971, entered her order, the pertinent portions of which provided:

(1) That the temporary restraining order previously entered by the court be modified to permit the sale of Catalina Mobile Home Park to Mobile Home Communities pursuant to the terms of the escrow agreement.

(2) Ordering Mrs. Saxon to execute such instruments as were necessary to consummate the sale, and

(3) Ordering the net proceeds of the sale to be placed in a savings account to be withdrawn only by order of the court.

Judge Riddel's order further provided that "for the purpose of the foregoing order, upon the evidence presented at this hearing, the court determines that the parties hereto have an interest in Parcel 1 only, but the nature of that interest is not herewith decided."

Petitioner applied to this court for a temporary stay of Judge Riddel's December 31, 1971, order which, after hearing we granted. Further, Mobile Home Communities, alleging a direct interest in this special action was allowed to intervene for the purpose of filing briefs and participating in oral argument in support of Judge Riddel's order.

Mrs. Saxon's basic contention before this court is that the trial court lacked jurisdiction to enter an order compelling the sale of real property of the parties prior to a final determination of the matter by a judgment of divorce.

We believe that the starting point of this discussion must be a determination of the rights of co-owners of property to compel the sale of the co-owned property against the wishes of a co-owner. Our research has disclosed that at common law, one co-owner could not compel another co-owner to sell his interest in real property, aside from a partition action and a sale pursuant thereto. See generally 154 A.L.R. 767 et seq.

Does the fact that the co-owners are married change this common law rule? Not in Arizona. Insofar as real property is concerned in Arizona, all the common law disabilities attached to a married woman's disposition of her property have been abolished. See A.R.S. § 25–214 and A.R.S. § 33–452.

It would therefore appear that the marriage relationship alone does not grant to the husband any more power over the conveyance of his wife's interest in real property than if the parties were unmarried and held real property in some form of joint or common ownership. *See* Pauley v. Hadlock, 21 Ariz. 340, 188 P. 263 (1920).

Since we have determined that marriage does not enlarge the common law right to compel a sale, does the fact that a divorce is pending between the co-owners do so? With certain limited exceptions, we believe not.

In Arizona, divorce is a statutory action and a trial court has only such jurisdiction as is given it by statute. Van Ness v. Superior Court, 69 Ariz. 362, 213 P.2d 899 (1950). In our opinion, two statutes exist which might, under appropriate circumstances, operate to grant the trial court jurisdiction to compel the sale of co-owned real property in a divorce action setting. The first of these is A.R.S. § 25–318 as amended. This statute provides in part:

> "A. On entering a judgment of divorce the court shall order such division of the property of the parties as to the court seems just and right, according to the rights of each of the parties and their children, without compelling either party to divest himself or herself of title to separate property, except that as to property held by the parties either as joint tenants with right of survivorship, as tenants in common, or as tenants by the entirety, the court may in the same action, on its own initiative or on petition of either party, order division of such property, or enter an order directing partition of such property in the manner provided by title 12, chapter 8, article 7.
>
> \* \* \* \* \* \*
>
> "C. If a sale of the property is directed, any of the parties to the partition proceeding may become the purchaser at such sale."

Obviously, A.R.S. § 25–318 is not applicable to the situation before the court, as it is only applicable by its terms "on entering a judgment of divorce." Here, the trial court did not purport to enter a judgment of divorce. Moreover, in our opinion, this statute does not increase the court's common law power to compel a sale of co-owned property, but merely allows the combining of a partition action under A.R.S. § 12–1211 et seq. with the pending divorce proceeding insofar as joint tenancy, tenancy in common, and tenancy by the entirety property is concerned. There is no contention made that a partition action was pending in this action.

The second applicable statute and the one relied upon by respondents is A.R.S. § 25–315. This statute, in addition to allowing the court during the pendency of the action to make orders for alimony, support, and attorneys fees, provides:

> "The court may make *temporary orders respecting the property of the parties* or the custody of the children of the parties, as may be necessary." (Emphasis added.)

While the alimony, support, attorneys fees, and child custody provisions of this statute have been much litigated in Arizona, that portion of the statute dealing with temporary orders respecting property of the parties has not been the subject of an appellate decision in Arizona.

However, similar statutes have been interpreted in Texas, which according to the reviser's note is the source of our statute, and in Idaho. Both of these states have placed similar interpretations on this portion of their statute, that is, that it gives the trial court jurisdiction "to preserve the property involved in a divorce suit, or where the property is in danger of being lost, removed, or materially injured, or is of such character as may be placed beyond the reach of the court . . . to make pertinent temporary orders as shall be necessary . . . until a final decree shall be made in the case." Dyer v. Dyer, 87 S.W.2d 489, 490 (Tex.Civ.App.1935).

Likewise, the Idaho court has held that this type of statute "enables the court to preserve the property from dissipation, removal, or waste during the pendency and progress of the divorce action." Benson v. District Court, 57 Idaho 85, 62 P.2d 108 (1936).

We adopt the above quotations as being interpretative of A.R.S. § 25–315 dealing with the power of the court to affect prop-

erty of the parties pending the final determination of the action. Under this interpretation it might be appropriate for a trial court, during the pendency of the divorce action, to compel the parties to sell co-owned real property. For example, where it is shown that foreclosure proceedings are imminent against co-owned real property and the inability of the parties to avoid such foreclosure is shown, sale of the property may be necessary to *preserve* the equity of the parties in that property.

 Such, however, is not the case before this court. While it is true that the evidence was capable of being interpreted as showing that a sale of the property at this time would be financially advantageous to both parties because of tax liabilities and the threat of pending litigation, there was absolutely no evidence to show that the real property involved needed to be sold to preserve any equities therein, or that it was in any danger of being materially injured, lost, removed, dissipated or wasted.

Also, the evidence is clear that Mrs. Saxon has elected to reject the advantages which might accrue to her. We cannot say that she does not have the legal right to do so. While the trial court might properly consider if Mrs. Saxon's action was completely arbitrary and resulted in a detriment to the parties' financial situation, charging the resultant financial loss to her portion of the community property in a final order disposing of that property, in absence of any evidence that the property would be lost to the parties or that a sale was necessary in order to preserve some interest in the property, the court had no jurisdiction under A.R.S. § 25–315 to order the sale of the real property during the pendency of this action. This is not to say that the court may not upon a final determination of this matter, proceed under § 25–318, as amended, and if the circumstances are appropriate, order a sale pursuant to the provisions of that statute.

Having found the trial court had no jurisdiction to enter the order of December 31, 1971, said order is hereby declared null and void and the issuance of our mandate in this matter shall constitute an order so declaring. Further, our mandate shall constitute an order exonerating the surety bond heretofore filed in this matter.

HAIRE and EUBANK, JJ., concur.