633 P.2d 418

Hazel REGISTER, Mildred Jo Parry, Mabel Hart and Mary Jennings, Appellees,

v.

John Curtis COLEMAN, Appellant.

No. 15067.

Supreme Court of Arizona, In Banc.

July 31, 1981.

Rehearing Denied Sept. 15, 1981.

Fenton J. McDonough, Scottsdale, for appellant.

Morgan, Cord & Crail by B. Monte Morgan, Scottsdale, for appellees.

STRUCKMEYER, Chief Justice.

This is an appeal by John Curtis Coleman from the granting of a motion for summary judgment in an action for partition and from an order dismissing his counterclaim against the appellees. Affirmed.

In 1955, Mrs. Ora Coleman, mother of appellant and appellees Hazel Register, Mildred Jo Parry, Mabel Hart and Mary Jennings, purchased a house and lot in Scottsdale, Arizona for cash. Thereafter, in 1963 Mrs. Coleman caused the property to be transferred to herself and appellant in joint tenancy with right of survivorship. In 1971, Mrs. Coleman quitclaimed her undivided one-half interest to appellees. In 1975, Mrs. Coleman passed away, and in 1977 this action was started by her daughters for a partition. Summary judgment was entered in their favor on March 2, 1979.

Appellant claims that there was an oral agreement between himself and Mrs. Coleman prior to the time the property was placed in joint tenancy to the effect that if Mrs. Coleman died first, he would give his sister Hazel $2,000 and each of the other sisters $1,000, and that because of this agreement, Mrs. Coleman created the joint tenancy with appellant. Appellant asserts also that it was not until after Mrs. Coleman's death in 1975 that he learned she had executed a quitclaim deed to her one-half interest in the property, naming appellees as the grantees. The Superior Court, being of the opinion that there was no genuine

issue as to any material fact, granted the appellees' motion for summary judgment, ordered the property sold and the proceeds divided, one-half to appellant and one-half to appellees.

Appellant has alternative positions. His principal position is that he entered into an oral agreement with Mrs. Coleman which he performed, that he has relied on the agreement and, hence, should be declared the sole owner because he survived his mother. Alternatively, he urges that if his oral agreement with Mrs. Coleman is not enforceable, then he is entitled to 75% of the partition sale proceeds because of improvements which he made on the property. Appellant also presents other grounds for appeal which will be dealt with at the appropriate time.

The issue to be decided is whether there was a genuine issue of material fact so that appellees were not entitled to summary judgment as a matter of law pursuant to Rule 56, Rules of Civil Procedure.

█ It has been held repeatedly by this Court that when a party has moved for summary judgment and established that no issue of material fact exists, the opposing party has the burden to show there are indeed factual issues to be tried and that evidence is available which would justify a trial. *W. J. Kroeger Co. v. Travelers Indemnity Company*, 112 Ariz. 285, 541 P.2d 385 (1975). It has undisputably been established that the subject matter of this law suit was purchased by Mrs. Coleman in 1955, and she put the property into joint tenancy with her son in 1963, and that in 1971 she transferred by quitclaim deed her remaining one-half, undivided interest to her daughters, appellees herein. While a joint tenant cannot convey an entire estate unless authorized by his co-tenant, he can transfer his undivided one-half interest. *Cooley v. Veling*, 19 Ariz.App. 208, 505 P.2d 1381 (1973). Upon the execution of the quitclaim deed in 1971, Mrs. Coleman's interest was conveyed to appellees and the joint tenancy ownership with appellant was destroyed. Since appellant does not deny the legal ownership of the property is in

himself and appellees, a prima facie case for partition was made as a matter of law.

Appellant argues, however, that the statute of frauds does not prevent the enforcement of the oral agreement between himself and his mother. He relies on these parts of A.R.S. § 44–101:

"No action shall be brought in any court in the following cases unless the promise or agreement upon which the action is brought, or some memorandum thereof, is in writing and signed by the party to be charged * * *:

     *     *     *     *     *     *

6. Upon an agreement for leasing for a longer period than one year, or for the sale of real property or an interest therein. * * *.

     *     *     *     *     *     *

8. Upon an agreement which by its terms is not to be performed during the lifetime of the promisor, or an agreement to devise or bequeath any property, or to make provision for any person by will."

For a writing, appellant relies on the joint tenancy deed signed by Mrs. Coleman. He argues that the deed is evidence in writing that Mrs. Coleman intended that appellant would become the sole owner of the property at the time of her death and that the deed therefore satisfies the requirements of both quoted sections of the statute of frauds.

█ The statute requires there be a memorandum in writing, signed by the party to be charged. It must contain the terms and conditions of all the promises constituting the contract and by whom and to whom the promises are made. *Shreeve v. Greer*, 65 Ariz. 35, 173 P.2d 641 (1946); *Del Rio Land, Inc. v. Haumont*, 118 Ariz. 1, 574 P.2d 469 (App. 1977); see Restatement (Second) of Contracts §§ 207–209. The deed here is couched in the usual terms required for the transfer of an interest in land. It does not contain the terms and conditions of the contract between appellant and Mrs. Coleman. No enforceable agreement exists.

■ Appellant asserts that there is a triable issue arising out of his counterclaim in that the appellees lost their co-tenancy interest, which they acquired in 1971, by reason of his adverse possession. It is plain, however, that appellant could not have occupied the premises adversely to appellees for the reason that he was unaware of the execution of his mother's deed quitclaiming her one-half interest in the property to appellees. "Adverse" connotes that one in possession of land claims the exclusive right thereto and denies by word or action the owner's title. *Leon v. Byus*, 115 Ariz. 451, 565 P.2d 1312 (App. 1977). Appellant does not direct our attention to any particular statute on adverse possession which would support his claim, and we know of none which would give rise to adverse possession under the circumstances of this case.

■ Appellant argues that the court erred in dismissing his counterclaim because he was willing to perform according to the agreement he made with Mrs. Coleman. He argues first that the quitclaim deed was merely a security device to ensure appellees would receive what appellant promised Mrs. Coleman he would pay them. In the alternative, he argues he has performed the agreement in whole or in part; hence, the Statute of Frauds does not prevent the enforcement of the oral contract.

Appellant's testimony, taken at his deposition, does not support his allegation:

"Correct me if I am wrong, your mother and you discussed in 1963 how you were to handle disposition of the property following her death. And your statement is that upon her death, that your sisters would share equally in one half of the value of the property is that correct?

A. The value of the property at that time.

Q. At that time?

A. In '63.

Q. In '63?

Then from 1963 until the time of your mother's death, there was no discussion again concerning how the property was to be disposed of?

A. I don't recall any. She probably did discuss it with the girls. But, I mean, what she wanted to do—I mean, from judging what she finally did in '71."

As we understand the answer finally given, appellant is saying that he did not recall any discussion from 1963 until his mother's death in 1975 concerning how the property was to be disposed of; that he assumes Mrs. Coleman did discuss it with appellees "from judging what she finally did in '71." These facts fall short of establishing that the quitclaim deed was a security device.

■ As to the argument that part or full performance does not prevent the enforcement of the oral agreement, the undisputed facts indicate that the only interest of Mrs. Coleman that passed to her daughters was her interest in the land. Appellant's sisters not being successors to their mother's interests under the oral contract, appellant cannot enforce the agreement against them.

It should be remembered that if under the oral contract Mrs. Coleman gave up the right to convey her interest in the joint tenancy property, she nevertheless still had the power to do so.

■ Appellant urges that his counterclaim was improperly dismissed because he paid for improvements and additions to the house which doubled its value while he was a joint owner with Mrs. Coleman. The improvements which he asserts he made were completed in 1969. Since the appellees did not become joint owners until 1971, the value of the improvements cannot now be charged against appellees. If appellant had a bona fide claim against Mrs. Coleman, it should have been timely made against her estate after her death when he discovered that she had breached her agreement with him.

Appellant argues that the trial court erred in dismissing with prejudice Count 3 of the counterclaim without permitting him to amend to show a claim of contribution from joint owners for taxes, assessments and mortgage payments. However, we do not think this question is properly raised on appeal. We have searched the record and

**14**

cannot find any request by appellant in the trial court to amend his counterclaim.

 The appellant complains that the court erred in not granting him the relief prayed for in his counterclaim:

> "2. That he be authorized to be a bidder at such partition sale and utilize at least his fifty percent (50%) interest therein as a credit on such bid price as he may make for said realty."

The partition of real property is a statutory procedure, set forth in the Arizona Revised Statutes at §§ 12–1211 et seq. As such, the proceedings are governed by the statute. *Bledsoe v. Hood*, 44 Ariz. 292, 36 P.2d 564 (1934). By § 12–1218, it is provided that if on trial of an action it appears to the court that a fair partition of the property cannot be made without depreciating the value thereof, it shall render a judgment directing that the real property be sold. It is specifically provided by § 12–1218(C):

> "The court shall appoint a commissioner to make the sale provided by subsection B and return the proceeds into court to be divided between the persons entitled thereto according to their respective interests. * * *"

It is apparent from an examination of the statute that the court is specifically directed how the sale will be conducted. There is no authority in law which would permit appellant to use his interest as a credit against a bid which he might choose to make. When a statute creates a right and also creates a remedy for the right created, the remedy thereby given is exclusive. *Valley Drive-In Theatre v. Superior Court*, 79 Ariz. 396, 291 P.2d 213 (1955).

Appellant's final claim of error is that Count 4 of his counterclaim states a cause of action against his sister Hazel Register. To support the allegation of his counterclaim "that the said HAZEL REGISTER did induce ORA COLEMAN, mother of the parties hereto, to execute and deliver said Quit Claim Deed to her for the purpose of recording same to prevent Counterclaimant from becoming the sole owner of said realty in the event ORA COLEMAN predeceased Counterclaimant", he argues that Hazel Register did not deny that the quitclaim deed from Mrs. Coleman was recorded at her request. Here again we think the testimony of appellant taken in his deposition, including that quoted above, plainly points to the fact that appellant has no evidence to support an assertion that either Hazel or the other sisters unjustifiably induced a breach of his asserted agreement with Mrs. Coleman.

Judgment affirmed.

HOLOHAN, V. C. J., and HAYS, CAMERON and GORDON, JJ., concur.