700 P.2d 893

Arlene LONERGAN, Plaintiff-Appellant,

v.

Mary Anne Lonergan STROM, as Personal Representative of the Estate of Arthur J. Lonergan, deceased, Defendant-Appellee.

No. 1 CA–CIV 6807.

Court of Appeals of Arizona, Division 1, Department A.

Feb. 28, 1985.

Reconsideration Denied April 2, 1985.

Review Denied May 29, 1985.

Marvin Johnson, P.C. by Marvin Johnson, Charles B. Hultstrand, Phoenix, for plaintiff-appellant.

Bellamak & Mitchell by Ferris W. Bellamak, Vincent J. Zepp, Sandra L. Pomrenze, Scottsdale, for defendant-appellee.

## OPINION

BROOKS, Judge.

Plaintiff Arlene Lonergan (wife) appeals from a judgment dismissing her quiet title action against defendant Mary Anne Lonergan Strom (Strom), personal representative of the estate of wife's deceased husband Arthur (husband). The issues are:

1. Whether a statutory preliminary injunction issued in husband's action to annul his marriage was violated by a straw party transaction arranged by husband which changed the title to certain real property held by husband and wife as joint tenants to a tenancy in common;

2. If such a transfer violated the injunction, whether the trial court abused its discretion by declining to set aside the conveyance.

The undisputed material facts are as follows. Husband and wife were married in July 1978. Shortly thereafter, husband purchased the residence that is the subject of this action but directed that title to the

property be issued in his and his wife's names as joint tenants with the right of survivorship. They then took possession of the residence and thereafter occupied it as their home.

In June, 1980, the husband filed Maricopa County Superior Court Cause DR–130281 seeking an annulment of the marriage. A preliminary injunction issued in that action directed to both husband and wife pursuant to A.R.S. § 25–315 subd. A, par. 1(a) provided in pertinent part:

IT IS ORDERED that during the pendency of this action YOU, PETITIONER AND RESPONDENT NAMED ABOVE, as parties to this case, are enjoined from and shall not: (a) transfer, encumber, conceal, sell, or otherwise dispose of any of the joint, common or community property of the parties except in the usual course of business or for the necessities of life, without the written consent of both parties or the permission of the court.

On October 30, 1980, while the preliminary injunction was still in effect, husband quitclaimed his interest in the residence to Melody A. Foster, a legal secretary employed by his attorney. On the same date, and as part of the same transaction, Foster quitclaimed her interest in the property back to husband. No consideration was paid to or received by husband or Foster in connection with the execution of the two quitclaim deeds. Husband's sole reason for engaging in the transaction was to sever the joint tenancy relationship between himself and his wife leaving them as owners of the property as tenants in common.

On February 18, 1981 the Superior Court entered judgment in favor of wife in the annulment action, DR–130281, and its companion Cause C–413200.[1] Husband died on May 28, 1981 and wife did not learn of the existence of the quitclaim deeds to and from Foster until after his death.

Wife brought the instant quiet title action against Strom as personal representative of husband's estate seeking to void the conveyances between husband and Foster. Wife and Strom both moved for summary judgment. The trial court denied wife's motion and granted Strom's. In its minute entry the trial court stated:

It is the opinion of the Court that the domestic relations Court injunction in effect at the time of the execution and recording of the deeds in question, does not make the conveyances invalid automatically, but that the Court does have the power to declare the conveyances invalid and/or to order a reconveyance if the nature of the violation of the injunction justifies the exercise of such power.

It is the opinion of the Court that the conversion of the real property from joint tenancy to tenancy in common between the same parties was not violative of the intent or purpose of the injunction, nor did it alter the jurisdiction or power of the Court with respect to the property.

Although there was technically a "transfer" of the property (to a straw party) and back again to Arthur Lonergan [husband], it is the opinion of the Court that such does not justify the Court in exercising its power to alter the result of those conveyances. To do so would extend the effect of the automatic injunction in domestic relations cases beyond its purpose, and would restrict a party's right to determine his own estate plan which is clearly not a purpose of the injunction.

Judgment was entered in favor of Strom. Wife's motion for new trial was denied and this appeal followed.

We first address whether the transfer which occurred here violated the statutory injunction. The injunction, issued pursuant to A.R.S. § 25–315, enjoins the parties from making a "transfer ... of any of the joint ... property ... without the written

---

1. In C–413200 husband sought imposition of a constructive trust for fraud. Summary judgment was rendered for wife in both C–413200 and DR–130281. The cases were consolidated on appeal as 1 CA–CIV 5931. This court rendered its memorandum decision in that case on March 24, 1983, reversing and remanding for trial. This court was not advised of the fact that husband had died in 1981.

consent of both parties or the permission of the court."

■ In *Estate of Estelle*, 122 Ariz. 109, 593 P.2d 663 (1979), our Supreme Court stated:

A joint tenancy is an estate held by two or more persons jointly, each having an equal right to its enjoyment during his or her life. The distinguishing feature of a joint tenancy is the right of survivorship by which the survivor takes the estate free of any claim of a deceased joint tenant. *Kleemann v. Sheridan*, 75 Ariz. 311, 256 P.2d 553 (1953). Joint tenancy requires the presence of the four unities: time, title, possession and interest. *Brown v. Navarre*, 64 Ariz. 262, 169 P.2d 85 (1946). Severance or destruction of one or more of these unities results in a destruction of the joint tenancy and the failure of the right of survivorship. See *Smith v. Tang*, 100 Ariz. 196, 412 P.2d 697 (1966).

122 Ariz at 111, 593 P.2d at 665. *See Krause v. Crossley*, 202 Neb. 806, 277 N.W.2d 242 (1979). As the court in *Tenhet v. Boswell*, 18 Cal.3d 150, 133 Cal.Rptr. 10, 554 P.2d 330 (1976) noted:

[A] joint tenant's right of survivorship is an expectancy that is not irrevocably fixed upon the creation of the estate [citation omitted]; it arises only upon success in the ultimate gamble—survival—and then only if the unity of the estate has not theretofore been destroyed. . . .

18 Cal.3d at 155–56, 133 Cal.Rptr. at 14, 554 P.2d at 334. It is generally the case that either party to a joint tenancy may terminate it by conveyance or other disposition of his interest, and the consent of the other tenants is not required. *Register v. Coleman*, 130 Ariz. 9, 633 P.2d 418 (1981); *Burke v. Stevens*, 264 Cal.App.2d 30, 70 Cal.Rptr. 87 (1968) (deeds to and from straw party that were intended to destroy a joint tenancy were effective to do so despite the secrecy with which the transac-

tion was accomplished); 48A C.J.S. *Joint Tenancy* § 16 (1981). Accordingly, except for the claimed effect of the preliminary injunction issued pursuant to A.R.S. § 25–315A, the legality of the straw party transaction by which husband sought to terminate the joint tenancy between himself and his wife was not subject to question.

■ We first find that husband's act of quitclaiming his interest in the residence to Foster constituted a "transfer" of his undivided one-half interest in the property. *See Register v. Coleman*, 130 Ariz. 9, 12, 633 P.2d 418, 421 (1981). As such, it was a clear violation of the injunction issued pursuant to A.R.S. § 25–315(a). Wife contends that this straw party transaction which destroyed the joint tenancy was therefore void as violative of the statutory preliminary injunction in DR–130281, and that she is entitled to the entire property free of any claim or interest of husband's estate. She argues:

In this instance, the purpose and function of the injunction by the trial court required by Arizona law indisputably was in order to maintain the status quo of the property of the parties pending resolution of the action. A transfer by one joint tenant to a third party was an effort to change the status quo.

We disagree with wife's characterization of the purpose of the statutory injunction.

Our decision in *Saxon v. Riddel*, 16 Ariz. App. 325, 493 P.2d 127 (1972), construing the predecessor to A.R.S. § 25–315,[2] held that the superior court's discretionary power to make temporary orders *pendente lite* concerning property involved in a divorce action was limited by the statutory purpose of protecting the marital estate from dissipation or removal beyond the reach of the divorce court. We stated:

[S]imilar statutes have been interpreted in Texas, which according to the reviser's note is the source of our statute, and in Idaho. Both of these states have placed

---

**2.** Former A.R.S. § 25–315 provided:

The court may make temporary orders respecting the property of the parties or the

custody of the children of the parties, as may be necessary.

similar interpretations on this portion of their statute, that is, that it gives the trial court jurisdiction "to preserve the property involved in a divorce suit, or where the property is in danger of being lost, removed, or materially injured, or is of such character as may be placed beyond the reach of the court ... to make pertinent temporary orders as shall be necessary ... until a final decree shall be made in the case." *Dyer v. Dyer,* 87 S.W.2d 489, 490 (Tex.Civ.App.1935).

Likewise the Idaho court has held that this type of statute "enables the court to preserve the property from dissipation, removal, or waste during the pendency and progress of the divorce action." *Bensen v. District Court,* 57 Idaho 85, 62 P.2d 108 (1936).

We adopt the above quotations as being interpretive of A.R.S. § 25–315 dealing with the power of the court to affect property of the parties pending the final determination of the action.

16 Ariz.App. at 328–29, 493 P.2d at 130–31. In our opinion, though A.R.S. § 25–315A now provides for a ministerial injunction with specific language, its purpose is still to forbid actions by either of the parties that would injure or dissipate the property of the marital estate and to forbid actions that would place the property beyond the power of the court thus preventing the court from allocating the property in its final decree. The transaction before us merely changed the form in which the parties held title to the marital property and did not remove the property from the marital estate or change its form so that it might be more easily secreted.

The cases on which wife relies in support of her argument to the contrary are inapposite. In *Martin v. Terrace,* 366 So.2d 275 (Ala.1979), the husband and wife held title to their family home in joint tenancy with right of survivorship before they were divorced. The court's final divorce decree provided that the wife would have the exclusive use of the home, "but that the title to the said homeplace shall remain as provided in the original deed to the said homeplace." The divorce decree also provided

that the husband would continue to make the monthly house payments. The husband later conveyed his interest in the home to his daughter by a previous marriage and then died. On appeal from summary judgment entered in favor of the daughter, the court held for the wife. It reasoned that by destroying the joint tenancy the husband violated the manifest intent of the divorce decree that the wife obtain title to the home if she survived him. The court further held that the husband had frustrated the decree's intent that the wife have the exclusive use of the home throughout her lifetime, because as a tenant in common the daughter could have forced the home to be sold and its proceeds divided.

Unlike *Martin,* the instant case does not concern a decree finally determining all the rights and liabilities between husband and wife, and embodies no long-term plan for the way in which the parties would own and possess their joint property in the future. The injunction at issue here had a much more limited purpose—to preserve the property of the marital estate and to keep it within the reach of the court, pending a considered determination of how it should be divided.

*Peckham v. Metropolitan Life Ins. Co.,* 415 F.2d 312 (10th Cir.1969) is also inapposite. There a final decree of divorce specifically provided that the wife would remain as beneficiary under a group insurance policy on the life of the husband for not less than ten years. In direct violation of the terms of the decree, the husband changed the beneficiary on the policy from his first wife to his second wife less than ten years later. The 10th Circuit understandably affirmed the trial court's ruling in favor of the first wife's estate. *Accord Wiltz v. John Hancock Mut. Life Ins. Co.,* 58 Mich. App. 604, 228 N.W.2d 484 (1975).

*Candler v. Donaldson,* 272 F.2d 374 (6th Cir.1959), is also distinguishable. In *Candler,* a portion of a temporary alimony order required the husband to make timely

payments on all his life insurance policies, and restrained him from:

selling, assigning, encumbering, hypothecating, or otherwise disposing of the property herein before mentioned, as well as any other property he may own, possess, or have interest in until a final adjudication of the interests of these parties in said property may properly be made by this Honorable Court.

272 F.2d at 376. After the order was issued, the husband changed the beneficiary on his life insurance policy from his wife to his mother and died six weeks later. The trial court held for the mother, noting that the temporary alimony order did not restrain the husband from changing beneficiaries. On appeal, however, the 6th Circuit reversed. It stated:

We see no reason for requiring the insured to continue to make the necessary premium payments except to keep the policy in effect for the benefit of the wife and child, the named beneficiaries therein, until a final adjudication of property rights was made.

272 F.2d at 377.

The same factors that distinguish *Martin v. Terrace, supra,* also distinguish *Candler.* Unlike the situation in *Candler,* the statutory preliminary injunction in the instant case contains no provision from which an intention to freeze the precise form in which the parties held title to their property could be inferred. And again, unlike *Candler,* the transaction challenged in this case left the property in question entirely in the hands of the parties to the marital community.

■ In our opinion, it is not the purpose of A.R.S. § 25–315A to freeze each party's estate plan as of the date of the filing of the petition for dissolution and thus insure that it will be effectuated without alteration in the event one of the parties dies before entry of a final decree. The statutory intent is to forbid actions by either party that would dissipate the property of the marital estate or place it beyond the court's adjudicatory power in the dissolution proceeding.

■ Although the court has the power to order a return to the status quo or to treat a transaction invalid where an injunction has been violated, *Kadrmas v. Kadrmas,* 264 N.W.2d 892, 894 (1978), exercise of this power is within the discretion of the court. We agree with the trial court that the "injunction in effect at the time of the execution and recording of the deeds in question, does not make the conveyances invalid automatically...." *See Gallaway v. Smith,* 70 Ariz. 364, 220 P.2d 857 (1950). The transfer here technically violated the injunction but it did not remove the property from the marital estate so as to place it beyond the reach of the court. Because the transfer did not contravene the purpose or intent of the injunction, we hold that the trial court did not abuse its discretion by declining to set aside the transfer.

· For the foregoing reasons, the judgment of the trial court is affirmed.

HAIRE, P.J., and GRANT, J., concur.