810 P.2d 624

**In re the Marriage of Joseph L. McCREADY, Petitioner/Appellant,**

v.

**Dolores I. McCREADY, Defendant/Appellee.**

No. 2 CA–CV 90–0241.

Court of Appeals of Arizona, Division 2, Department B.

April 23, 1991.

Rosen & Friederich by Gayle D. Reay, Tucson, for petitioner/appellant.

Slutes, Sakrison, Even, Grant & Pelander, P.C. by Alphus R. Christensen, Tucson, for defendant/appellee.

## OPINION

JAMES C. CARRUTH, Judge.*

Petitioner Joseph McCready appeals from the trial court's judgment in favor of respondent Dolores McCready in this action to dispose of their commonly held residential real property. As set forth below, we reverse.

### FACTS AND PROCEDURAL HISTORY

In October 1975, the McCreadys' marriage of some 11 years was dissolved in the Pinal County Superior Court as the result of an essentially uncontested petition for dissolution filed by Joseph. The decree of dissolution then entered divided all of the marital property of the parties and provided for child support for the parties' four minor children and spousal maintenance for Dolores, consistent with the provisions of a

---

* A Judge of the Pima County Superior Court authorized and assigned to sit as a Judge on the Court of Appeals, Division Two, pursuant to Arizona Supreme Court Order filed July 25, 1990.

settlement agreement which the parties had reached. The settlement agreement was found acceptable by the court and incorporated into the provisions of the decree of dissolution entered on October 6, 1975.

The property which is the subject of this dispute is a residence located in Tucson which was acquired by the parties in July 1977 and in which Dolores and the children have continuously resided since that time.[1] Joseph also resided there for several years after the acquisition of the residence. Title to the subject property was taken by the McCreadys as "husband and wife" and as joint tenants. The purchase price was furnished by roughly equal contributions from Joseph and Dolores. The parties never remarried each other and no contention is made in the instant proceeding that a marital relationship existed between the parties after October 1975.

The action which is the subject of this appeal was filed in the Pima County Superior Court in mid–1986 by Dolores for the purpose of enforcing and modifying Joseph's obligations for support and maintenance, among other things. The arrearage issues were largely settled between the parties following somewhat protracted litigation and negotiation, but issues associated with Dolores's efforts to modify the provisions for maintenance and "arising out of the sale of the residence" went to hearing and resolution by the trial court in December 1988. The court allowed Dolores the exclusive use of the subject property until the parties' youngest child graduated from high school. That order was not appealed.

In April 1989, Joseph filed a petition in the same Pima County post-dissolution cause seeking an order of the court requiring an "auction sale" of the subject property as well as injunctive relief from alleged harrassment by Dolores in the form of telephone calls at his place of business. This petition alleged, inter alia, that the youngest child was about to graduate from high school and advanced Joseph's desire that the property be sold to the highest bidder at an auction to be conducted by the civil division of the Pima County Sheriff's Office. Dolores's response to the petition asserted, inter alia, that the subject property should be appraised by two appraisers, one chosen by each of the parties, and that Dolores be given the right to purchase Joseph's equity by paying him an amount equal to one-half of a figure to be arrived at by averaging the two appraisals and by paying Joseph the required amount within 90 days of the latest appraisal. A hearing on the subject petition was conducted on August 4, 1989, during which the parties apparently advised the court that all issues, save disposition of the property, had been resolved. Following this hearing and the court's being advised that the parties had been unable to negotiate any disposition of the property, the court issued a ruling by minute entry on October 31, 1989, which found that the property was held by the parties as tenants in common[2] and that, although neither party had requested partition or the appointment of a special commissioner pursuant to A.R.S. § 12–1211, both parties had "submitted themselves to the equitable jurisdiction of the court by requesting relief regarding disposition of their commonly held property." The court then ordered that the property be appraised in the manner requested by Dolores and that she be allowed to purchase Joseph's equity by making the required payment within 90 days of the latest appraisal.

Thereafter, Joseph filed a motion for relief under civil Rule 60(c) together with certain objections to the form of the formal order prepared for the court's signature by Dolores's counsel. After a hearing on the motion, the court issued an order on May 17, 1990, sustaining the objections to the form of the order and requiring that a new order be presented but denied the motion under Rule 60(c) because of the trial

---

1. All but one of the children had reached majority at the time of the instant litigation and were away at school or otherwise living separately.

2. A change in title from joint tenancy to tenancy in common was accomplished by agreement prior to the August 4, 1989 hearing.

court's conclusion that petitioner had submitted himself to the equitable jurisdiction of the court and was "estopped from now raising the lack of jurisdiction of the court to make the ruling it did in its October 31, 1989 minute entry ruling."

## ISSUES

On appeal, Joseph argues that the trial court (1) lacked subject matter jurisdiction pursuant to A.R.S. § 25–311 to award real property acquired after dissolution to one party, (2) lacked jurisdiction to determine fair market value as an average between the estimates of two appraisers, and (3) lacked jurisdiction to render a judgment which credited the equity of one party against the fair market value of real property to be paid to the other party.

## DISCUSSION

The issues raised on appeal relate entirely to questions of law. This court is not bound by the trial court's legal interpretations. We are, therefore, free to draw our own conclusions from the facts presented. *Tovrea Land & Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 114, 412 P.2d 47, 51 (1966); *Aldabbagh v. Arizona Dept. of Liquor Licenses and Control*, 162 Ariz. 415, 418, 783 P.2d 1207, 1210 (App.1989).

■ Our review of this matter leads us to conclude that the trial court lacked jurisdiction to render the particular order entered because the only lawful means for disposing of the subject property in the absence of an agreement between the parties for a voluntary disposition was to follow the applicable partition statutes. *See Saxon v. Riddel*, 16 Ariz.App. 325, 328, 493 P.2d 127, 130 (App.1972).

Arizona cases hold that the right of partition is an incident of common ownership and is specifically authorized by statute. A.R.S. § 12–1211; *Lawson v. Ridgeway*, 72 Ariz. 253, 265, 233 P.2d 459, 467 (1951). A.R.S. § 12–1211(A) states:

The owner or claimant of real property or any interest therein may compel a partition of the property between him and other owners or claimants by filing a complaint in the superior court of the county in which the property, or a portion thereof, is situated.

The partition of real property held by cotenants is a statutory procedure and, as such, the proceedings are governed by the statute. *Register v. Coleman*, 130 Ariz. 9, 14, 633 P.2d 418, 423 (1981); *Bledsoe v. Hood*, 44 Ariz. 292, 295–96, 36 P.2d 564, 565–66 (1934). Parties, of course, can agree to a voluntary partition of property which may be effected in any manner upon which the cotenants agree. *See* 59A Am. Jur.2d *Partition* § 68 (1987), and cases cited therein. In the absence of such an agreement, the court must use its equitable discretion in a partition action to achieve fairness between the parties. "The fundamental objective in a partition action is to divide the property so as to be fair and equitable and confer no unfair advantage on any of the cotenants." *Frame v. Frame*, 227 Mont. 439, 441, 740 P.2d 655, 658 (1987), citing *Blonquist v. Frandsen*, 694 P.2d 595, 596 (Utah, 1984). *See also* 59A Am.Jur. 2D *Partition* § 6 (1987).

■ In a partition suit, the only relevant equities are those which arise out of the relationship of cotenancy. *Palmer v. Protrka*, 257 Or. 23, 25, 476 P.2d 185, 188 (1970). The statute sets forth specific procedures for an involuntary partition action, which, in essence, was what the court was presented with here. Under the statute, if it appears to the court that a fair division of the property cannot be made without depreciating the value thereof, it is required to render a judgment directing that the property be sold. The court is also required to appoint a commissioner to conduct the sale and divide the proceeds between the parties according to their respective interests. A.R.S. § 12–1218(C). *Register*, 130 Ariz. at 14, 633 P.2d at 423.

■ It is clear from the briefs filed here and in the trial court that the parties recognize the applicability of the partition statutes and winked at the jurisdictional problem in an effort to obtain an expeditious forum for the resolution of their dispute. While undoubtedly a properly presented claim respecting partition of the subject

property was cognizable in the post-dissolution action (see for example Restatement (Second) of Judgments § 9 (1982), "Jurisdiction Over Litigants Concerning Other Claims"), the parties here attempted to empower the court with jurisdiction by tacit, if not actual, consent to enter an order which it simply could not otherwise enter. "[P]arties cannot, by consent, give a court jurisdiction of a subject matter of which it would not otherwise have jurisdiction...." *Porter v. Porter*, 101 Ariz. 131, 137, 416 P.2d 564, 570 (1966), *cert. denied*, 386 U.S. 957, 87 S.Ct. 1028, 18 L.Ed.2d 107 (1967). The subject property was never "marital property" and thus subject to any of the provisions of Title 25. The only remedy left in the absence of a voluntary agreement for its disposition is an involuntary partition proceeding in which the statutory mechanism must be followed.[3]

 It is well established that when there are but two parties and each desires to have allotted to himself or herself the whole cotenancy property, the court cannot arbitrarily decide that one shall have the property to the exclusion of the other. 68 C.J.S. Partition § 168(2) (1950). "In considering a petition for partition, the trial court does not have the power to order one tenant to sell his interest to the other, while allowing the tenant in possession the right to retain the entire tract." *Janik v. Janik*, 474 N.E.2d 1054, 1057 (Ind.App. 3 Dist., 1985); *see also Rankin v. Coffer*, 85 Ohio L.Abs. 391, 392, 174 N.E.2d 631, 633 (App. 1960).

The trial court's determination that only Dolores had a right to purchase the cotenancy property denied Joseph his right of partition. In this state, the right of partition is a continuing one which lasts as long as the cotenancy exists. *Occhino v. Occhino*, 164 Ariz. 482, 484, 793 P.2d 1149, 1151 (App.1990); *Beltran v. Razo*, 163 Ariz. 505, 507, 788 P.2d 1256, 1258 (App. 1990).

---

3. That Joseph took no appeal from the earlier order allowing Dolores to have exclusive use of the property until the youngest child graduated from high school, and later chose a procedurally defective mechanism to achieve a sale, does not change this conclusion. Since the inception

**CONCLUSION**

Because the trial court's order of June 12, 1990, did not comply with the requirements of A.R.S. §§ 12–1211 through –1225, we reverse. Because no statutory authorization exists for attorneys' fees in a partition action, no fees are awarded.

FERNANDEZ, C.J., and HOWARD, J., concur.

---

of the post-dissolution litigation concerning this property, Joseph's position has always been consistent—the property should be sold. That he went about it incorrectly does not create an estoppel to now raise the applicability of the partition statutes.