NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

AMY S. LOISELLE, *Petitioner/Appellant*,

*v.*

ROBERT M. LOISELLE, *Respondent/Appellee*.

No. 1 CA-CV 24-0073 FC

FILED 12-17-2024

Appeal from the Superior Court in Maricopa County
No.  FC2019-010467
The Honorable Paula A. Williams, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

COUNSEL

State 48 Law Firm, Scottsdale
By Robert Hendricks, Stephen Vincent
*Counsel for Petitioner/Appellant*

High Desert Family Law Group, LLP, Scottsdale
By Craig Peter Cherney
*Co-Counsel for Respondent/Appellee*

Ahwatukee Legal Office, P.C., Phoenix
By David L. Abney
*Co-Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Judge Anni Hill Foster joined.

---

**P A T O N**, Judge:

¶1          Amy Loiselle ("Mother") appeals from the superior court's dissolution decree.  Mother contends the superior court erred by: (1) determining the community business was worth $1,566,000, (2) denying her reimbursement claim for half of the fair market rental value of the community home, (3) excluding her expert from the courtroom, (4) incorrectly calculating the amount of child support she should receive, and (5) considering her behavior rather than her legal positions in its attorneys' fees award determination.  For the following reasons, we affirm the superior court's valuation of the community business, denial of Mother's reimbursement claim for the marital home, and ruling excluding Mother's expert from the courtroom.  But we vacate and remand the court's child support and attorneys' fees awards for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶2          Mother and Robert Loiselle ("Father") were married for 21 years and have two children together.  Mother petitioned for dissolution of marriage in November 2019.  At the dissolution trial in July 2023, the parties disputed, as relevant here, the value of the community business, Mother's claim for reimbursement on the marital home ("McLintock house"), spousal maintenance, and child support.

¶3          In its dissolution decree, the superior court valued the community business at $1,566,000 based on the parties' joint expert's opinion as to its worth.  The court denied Mother's request for rental reimbursement of the McLintock house but found she was entitled to a $417,500 equalization payment as to the home.  The court ordered Father to pay Mother $2,000 per month in spousal maintenance and $355 per month in child support.

¶4          Both parties requested attorneys' fees.  The superior court granted Mother $35,000 in fees after determining both parties acted unreasonably but Father "[had] considerably more resources."

¶5            Mother subsequently filed motions to reconsider, alter-amend and for relief from decree and to correct the child support order. The superior court denied Mother's motions to reconsider, alter or amend, and for relief from the decree.  But it partially granted Mother's motion to correct the child support order.

¶6            Mother timely appealed.  We stayed the appeal and revested jurisdiction in the superior court to resolve the pending motions and attorneys' fees and costs issue.  The court resolved the matters, issued its Rule 78(c) judgment, and Mother timely filed an amended notice of appeal. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") Section 12-2101(A)(1)-(2).

## DISCUSSION

¶7            Mother argues the superior court erred by: (1) valuing the community business at $1,566,000, (2) denying her reimbursement claim for the reasonable rental value of the McLintock house, (3) excluding her expert witness from the courtroom, (4) calculating the incorrect amount of child support, and (5) relying on improper factors in its attorneys' fees award.

I.            **The court did not err in valuing the community business at $1,566,000.**

¶8            Mother and Father established two businesses together during their marriage but only disputed the value of one of the businesses, Independent Electric ("community business"), at trial.  They agreed to hire a joint expert, Brendan Kennedy, who prepared a 60-page business valuation.  Kennedy opined that the business was worth $1,566,000.

¶9            Mother hired another expert, Mark Hughes, to assess Kennedy's valuation report.  Hughes largely agreed with Kennedy's report but found two areas required reconsideration—the parties' personal expenses and deductions related to Red Moon Development.[1]  Kennedy issued a 29-page updated report ("Updated Report"), in which he only amended the schedules, in order to reflect Hughes' recommendations and valuing the community business at $1,712,000.  The Updated Report, however, did not contain an introduction explaining the purpose of appraisal, the scope of work, or the business description; it did not describe

---

[1] Father testified the company business would bid to do the electricity installation for Red Moon Development's newly-constructed home and, in exchange, the community business would pay a kickback to Red Moon if the bid was accepted.

the various valuation approaches used to calculate the business's value; and it did not contain a "conclusion of value" section. And Kennedy did not expressly state he had changed his opinion on his initial valuation number.

¶10         In the parties' joint pretrial statement ("JPTS"), Mother stated she "believes the parties agree with the community value of the business at $1,712,000." But Father disputed the valuation in the JPTS, and argued Kennedy's $1,712,000 valuation, "if adopted by the Court, should likely be reduced by 10% to reflect costs of marketing and closing on any future sale." In her post-trial Findings of Fact & Conclusions of Law, Mother's counsel outlined the parties' pretrial stipulations; she did not include that the parties had stipulated to the value of the business as one of these stipulations.

¶11         At trial, the superior court heard testimony from Mother, Father, and their experts on the valuation issue, and admitted the expert reports into evidence. When Kennedy was asked whether he agreed with his Updated Report valuing the business at $1,712,000 instead of the original $1,566,000, Kennedy stated, "I'm not convinced that those adjustments were all appropriate. . . . We produced [the Updated Report] to show what the value would be, had we made those adjustments that Mark Hughes suggested we should, and this is what the number would be." He then said that because he disagreed with Hughes' suggested changes, the business should be valued at $1,566,000. In its decree, the superior court noted it found Kennedy to be more credible than Hughes and agreed with Kennedy's $1,566,000 valuation amount.

¶12         Mother argues the superior court was required to value the business at $1,712,000 because the parties formed a Rule 69 agreement that the business was worth the higher amount. *See* Ariz. R. Fam. Law P. ("ARFLP") 69. She alternatively argues that even if the parties did not enter into a Rule 69 agreement on the matter, the court erred by not accounting for the expenses related to the "Red Moon Jobs" in its evaluation. Finally, she claims the court violated her due process rights by adopting Kennedy's valuation because she did not have notice that the value of the community business would be an issue at trial. Mother raised these issues in her post-trial motion for reconsideration, which the court summarily denied.

**A.     The parties did not enter into a Rule 69 agreement on the value of the business.**

¶13         An agreement between the parties is valid and binding on the parties if the agreement is "in writing and signed by the parties personally

or by counsel on a party's behalf" or if "the agreement's terms are stated on the record before a judge, commissioner, judge pro tempore, or certified reporter." ARFLP 69(a)(1), (2). A Rule 69 agreement, however, is "not binding on the court until it is submitted to and approved by the court." ARFLP 69(b). We review the validity and enforceability of a Rule 69 agreement de novo. *Ertl v. Ertl*, 252 Ariz. 308, 312, ¶¶ 11-13 (App. 2021); *see also Amiros v. Rohr*, 243 Ariz. 600, 605, ¶ 16 (App. 2018) (explaining that whether a contract has been formed and is enforceable is a mixed question of law and fact that is reviewed de novo).

**¶14** Mother argues that because she and Father both adopted the Updated Report's valuation for the community business in their signed pretrial statements, they formed a binding Rule 69 agreement. Father responds that they never entered into a binding Rule 69 agreement.

**¶15** Although both parties' experts utilized the Updated Report valuation in their expert reports, the parties did not agree to be bound by its valuation. While Mother stated in the JPTS that she "believe[d] the parties agree with the community value of the business at $1,712,000," both parties listed the value of the business as a disputed issue. Kennedy was also identified as a testifying witness in the JPTS, and the parties questioned him on the valuation of the community business rather than limiting his testimony to whether a 10% discount should be applied. Accordingly, because no Rule 69 agreement was approved and entered by the court on the valuation issue, the court was not bound to value the business at $1,712,000. *See Meek v. Meek*, 256 Ariz. 405, 410, ¶ 22 (App. 2023) (parties who sign a Rule 69 agreement enter a contract which is not binding on the court until submitted to and approved by the court).

> **B.** **The superior court did not err in its determination that the community business was worth $1,566,000.**

**¶16** Mother contends the court made a clear mathematical error by not excluding the Red Moon expenses when determining the value of the community business. We review a court's determination of the value of a business in a divorce proceeding for an abuse of discretion. *Schickner v. Schickner*, 237 Ariz. 194, 197, ¶ 13 (App. 2015). A superior court abuses its discretion when it commits an error of law or "reaches a conclusion without considering the evidence . . . or the record fails to provide substantial evidence to support the trial court's finding." *Flying Diamond Airpark, LLC v. Meienberg*, 215 Ariz. 44, 50, ¶ 27 (App. 2007) (citation omitted). It is the superior court's role to weigh the evidence and determine credibility. *See Gutierrez v. Gutierrez*, 193 Ariz. 343, 347, ¶ 13 (App. 1998).

¶17        Here, the superior court heard testimony from both Kennedy and Hughes regarding the business's valuation, including their opinions on whether to apply Red Moon-related costs and personal expense deductions based on whether cash that was withdrawn from business accounts was for business or personal expenses.  Kennedy explained that he did not agree with Hughes' adjustments and Kennedy believed his initial valuation of $1,566,000 was correct.  When Mother later recalled Kennedy to testify, she asked him whether the Red Moon adjustments recommended by Hughes were the result of a mathematical error.  Kennedy said no and "[he] had already accounted for that in [his] numbers."  Hughes was also recalled and asked whether the Red Moon adjustments were the result of Kennedy's mathematical error; he replied yes.  He stated: "We gave him the mathematical proof . . . . We gave him the mathematical charges that were demonstratively not included. And it is my testimony here that those were mathematically and demonstratively not included in his [first] report."

¶18        But Father explained when he was recalled to testify that the transactions were more like a barter involving credits, and as a result of their arrangement, no money was exchanged between the family members and Red Moon principals because "it wasn't real money."  And when Hughes testified on this point, he acknowledged that he was not familiar with the practice of bartering in the electrical business and therefore did not account for it in his valuation.  The superior court found Kennedy's original report and testimony to be more credible than Hughes' and ultimately valued the business at Kennedy's original amount.  Given that the record supported valuing the business at the original amount, we cannot say the court abused its discretion in doing so.

### C.    The court did not violate Mother's due process rights by valuing the community business at $1,566,000.

¶19        Mother also contends she was denied due process because she did not have notice that the value of the business would be a contested issue at trial until Kennedy testified and adopted an "abrupt reversion" to his original valuation amount.  "Notice is sufficient for due process purposes if it is reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections or claims." *In re. Rts. to Use of Gila River*, 171 Ariz. 230, 236 (1992) (citation omitted).  Due process errors require reversal only if the party is prejudiced by the error. *Volk v. Brame*, 235 Ariz. 462, 470, ¶ 26 (App. 2014).  "We review constitutional claims de novo." *Emmett McLoughlin Realty, Inc. v. Pima Cnty.*, 212 Ariz. 351, 355, ¶ 16 (App. 2006).

¶20        The record shows Mother had adequate notice that the value of the business was at issue. Both parties listed the business's valuation as a contested issue in their JPTS, and Father disputed the value of the company by arguing the court should apply a 10% value reduction. Even though Father only discussed the reduction in his JPTS, there was no binding agreement that it was the only remaining issue disputed at trial. Additionally, the parties listed both of Kennedy's reports as exhibits for trial and questioned him about his valuation of the business.

¶21        But even assuming Mother did not have adequate notice that the community business's value was at issue, she was not prejudiced. Mother's expert read and critiqued Kennedy's initial report before trial and had the opportunity to explain why he believed Kennedy's first report was not accurate during his trial testimony. Mother also had an opportunity to cross-examine Kennedy on his opinion when he initially testified and when she recalled him at the end of trial to ask additional questions about his valuation opinion. The court did not err.

## II.      The court did not abuse its discretion by excluding Mother's expert witness from the courtroom under Arizona Rule of Evidence 615.

¶22        Mother contends the superior court should have denied Father's request to invoke Arizona Rule of Evidence 615(c) ("Rule 615") to exclude her expert from the courtroom during testimony. Rule 615 requires a court to "order witnesses excluded from the courtroom and prohibited from receiving trial testimony through any means" either at a party's request or the court may do so on its own. Ariz. R. Evid. 615. But the court cannot order sequestration for "any person whose presence a party shows to be essential to presenting the party's claim or defense." Ariz. R. Evid. 615(c).

¶23        "[B]efore [the superior] court exempts a witness from the general rule of exclusion under Rule 615(c), the party requesting the exemption must make a fair showing that the expert witness is in fact required for the management of the case." *Spring v. Bradford*, 243 Ariz. 167, 174, ¶ 33 (2017) (cleaned up). A superior court has discretion to determine when a particular witness's presence is "essential" and permit the witness to hear or read other testimony. *Id.* We review the superior court's ruling regarding the applicability of Rule 615(c) for an abuse of discretion. *United States v. Seschillie*, 310 F.3d 1208, 1213 (9th Cir. 2002) (reviewing for abuse of discretion Rule 615(3) of the Federal Rules of Evidence, which directly mirrors Ariz. R. Evid. 615(c)).

¶24 Mother argued her expert witness, Hughes, should not be excluded because he was "essential . . . regarding numerous financial issues and because he reviewed the other experts'" reports and that "his expertise and his testimony is essential to [her] testimony." In other words, she claimed the court should allow him to remain present because he qualified under the "essential witness" exception to Rule 615(c). Father responded it was an "incredulous" suggestion that Hughes was essential to Mother's presentation of testimony which should be based on her personal knowledge, not being "coach[ed]" by an expert during a break. In denying Mother's motion, the court stated that her reasoning for why he was "essential" would apply to every expert witness who testifies and denied the motion. *See Seschillie*, 310 F.3d at 1213 ("We decline to conclude, however, that an expert witness will *always* meet the criteria of Rule 615(3)."). Even if Hughes was essential to Mother's case, however, Mother cannot show she was prejudiced by his exclusion. After Kennedy's alleged "surprise" testimony on the value of the community business, Mother recalled both Hughes and Kennedy back to the witness stand and questioned both of them about the value of the business. We see no abuse of discretion.

## III. Mother is not entitled to reimbursement for the fair market rental value of the McLintock house.

¶25 Mother argues she is entitled to reimbursement for the fair market rental value of the McLintock house during the pendency of the dissolution proceedings. She contends she is entitled to reimbursement because Father was living at the McLintock house for free while she had to purchase a new home and furnish it. She asks this court to recognize affirmative ouster as the basis for her claim, which no Arizona court has recognized. We need not reach the issue, however, because Mother has not proven she was ousted from the McLintock house.

¶26 Absent an abuse of discretion, we will not disturb the superior court's division of property. *Hammett v. Hammett*, 247 Ariz. 556, 559, ¶ 13 (App. 2019); *see Olivas v. Olivas*, 780 P.2d 640, 644, ¶ 10 (N.M. App. 1989). We view the facts in the light most favorable to upholding the superior court's ruling. *Ball v. Ball*, 250 Ariz. 273, 275, ¶ 1, n.1 (App. 2020). Ouster occurs when a co-tenant notoriously and unequivocally acts to deprive another of the right to the common and equal possession and enjoyment of the property. *Morga v. Friedlander*, 140 Ariz. 206, 208 (App. 1984). "A tenant can prove ouster through any facts establishing that an occupying joint tenant has claimed as an individual more than his due as a joint tenant." *Ferrill v. Ferrill*, 253 Ariz. 393, 397, ¶ 14 (App. 2022) (citation omitted). In

deciding whether a party may be liable for a portion of rent for occupying the community home after a dissolution petition has been served, the issue depends on whether one spouse denied the other's right to occupy the marital home. *Id.* at ¶ 16.

**¶27** Shortly after Mother filed the dissolution petition, she was arrested and pled guilty to assaulting Father. She spent four months in jail and Father obtained an order of protection against her. Mother testified that after she was released from jail, she lived at the McLintock house for a month with Father before purchasing her own home and moving out.

**¶28** The superior court determined Mother was not ousted, as her own actions led to criminal conduct and a no-contact order. We agree with the superior court that the record does not support Mother's argument that Father ousted her from the home. Mother testified she lived at the McLintock house for at least a month in the time between her release from jail and purchase of her own home, and that she ultimately moved out because Father threatened to call the Sheriff's Department to enforce the order of protection in place as a result of her criminal conviction. But the record does not show that Father followed through with this alleged threat. Further, around the time of Mother's release from jail, Father filed a request to terminate the no-contact order noting, "It is being stated that [Mother] reside at [the McLintock house] and [Father is] going to reside in our AZ home." The court did not abuse its discretion in determining Mother was not ousted from the community home and therefore not entitled to reimbursement.[2]

**IV.    The superior court erred in calculating child support because it did not apply the income amount it expressly stated was supported by the evidence in the case.**

**¶29** We review child support awards for an abuse of discretion. *Engel v. Landman*, 221 Ariz. 504, 510, ¶ 21 (App. 2009). An abuse of discretion occurs when the court commits an error of law that underlies its exercise of discretion. *Kohler v. Kohler*, 211 Ariz. 106, 107, ¶ 2 (App. 2005).

---

[2] Because we find Mother was not ousted from the McLintock house, we decline to address her arguments that her reimbursement claim was improperly denied either based on her conviction or because it was addressed in the spousal maintenance award.

We accept the court's factual findings unless clearly erroneous. *Sherman v. Sherman*, 241 Ariz. 110, 113, ¶ 9 (App. 2016).

**¶30** Section 25-320(A) provides that the superior court "may order either or both parents owing a duty of support to a child . . . to pay an amount reasonable and necessary for support of the child, without regard to marital misconduct." Under subsection D of the same statute, the legislature directed the supreme court to "establish guidelines for determining the amount of child support." Section 25-320(D). The result is the Arizona Child Support Guidelines ("Guidelines").[3]

**¶31** The Guidelines provide a framework for determining the amount of child support, "consistent with the reasonable needs of children and the ability to pay." Guidelines section 1. The Guidelines follow the "Income Shares Model" which is based on the gross income of both parents and calculates child support as "[t]he total child support amount . . . that would have been spent on the children if the parents and children were living together." Guidelines, Background. The model also presumes each parent contributes his or her proportionate share of the total child support amount. *Id.*; *see Cummings v. Cummings*, 182 Ariz. 383, 386 (App. 1994) (interpreting the 1992 Guidelines which also used the Income Shares Model).

**¶32** Prior to trial, Mother filed a timely request for findings of fact and conclusions of law pursuant to Rule 82(a), ARFLP. That rule provides that "[i]f requested before trial, the court must make separate findings of fact and conclusions of law." Rule 82(a)(1), ARFLP. "One of the purposes of [Rule 82(a)] is to give appellate courts the ability to examine the basis for a mathematical figure awarded as child support." *Stein v. Stein*, 238 Ariz. 548, 551, ¶ 10 (App. 2015). "[W]e must be able to determine which evidence formed the bases of the awards before we can affirm them." *Id.* (citation omitted). As our supreme court has explained:

> An appellate court must be able to discern more than a permissible interpretation of the trial court's analysis. The reviewing court needs a sufficient factual basis that explains how the trial court actually arrived at its conclusion. Without

---

[3] The 2018 Guidelines control this case because the parties' petition for divorce decree was filed in 2019, prior to the effective date of the 2022 Guidelines.

this explanation, an appellate court cannot effectively review
the decision-making process of the trial court.

*Miller v. Bd. of Supervisors*, 175 Ariz. 296, 299 (1993) (citation omitted). When
a proper Rule 82(a) request is made, but the superior court's findings are
insufficient, we do not infer additional findings necessary to sustain the
award. *See Elliott v. Elliott*, 165 Ariz. 128, 135 (App. 1990).

**¶33**        In its child support worksheet, the superior court attributed
$11,000 per month as Father's income. But in its spousal maintenance
determination, the court found that using a six-year average of the tax
returns to determine Father's income was reasonable and that average
equaled $183,490.25 per year, substantially more than $11,000. The court
also found that Father's personal bank statements "reflect an average
deposit of $11,000 per month net." Although a superior court's
determination of spousal maintenance income may differ from child
support income, *see* Arizona Spousal Maintenance Guidelines Section
III(A)(1)(a), the court did not explain how or why it determined $11,000 was
the correct amount for child support.

**¶34**        "It must be clear from the family court's findings how the
court arrived at its mathematical figure." *Stein*, 238 Ariz. at 551, ¶ 12.
Because we cannot determine how the superior court arrived at its $11,000
per month determination—specifically, whether it erred by using Father's
*net* income from the $183,480.50 salary amount, or its legal basis for using
$11,000 in the child support worksheet—we remand for additional
findings. *See Miller*, 175 Ariz. at 300.

## V.      The superior court erred in two of the findings it made supporting its attorneys' fees award.

**¶35**        Mother argues the superior court improperly considered her
behavior rather than her legal positions in determining attorneys' fees. *See
In re Marriage of Williams*, 219 Ariz. 546, 548-49, ¶¶ 9-10 (App. 2008) (the
reasonableness position in A.R.S. § 25-324(A) refers to legal positions). "A
legal position is one asserted in relation to the litigation." *Viands v. Viands*,
1 CA-CV 16-0534, 2017 WL 4248071, at *2, ¶ 8 (Ariz. App. Sept. 26, 2017)
(mem. decision). Mother also contends that many of the positions she took
during the dissolution proceeding were not unreasonable.

**¶36**        "[A]fter considering the financial resources of both parties
and the reasonableness of the positions each party has taken throughout the
proceedings," the court may award reasonable attorneys' fees. A.R.S. § 25-
324(A). We will not disturb a ruling on attorneys' fees absent an abuse of

discretion. *In re Marriage of Williams*, 219 Ariz. at 548, ¶ 8. "An abuse of discretion occurs when a court commits an error of law in the process of reaching a discretionary conclusion." *Id.*; *Little v. Little*, 193 Ariz. 518, 520, ¶ 5 (1999).

¶37 The superior court listed four reasons for finding that Mother was unreasonable in its attorneys' fee award determination. First, Mother "violated the [p]reliminary [i]njunction by withdrawing hundreds of thousands of dollars from community accounts without Father's consent after the [p]reliminary [i]njunction went into effect." Second, Mother "would not cooperate in getting the taxes filed." Third, Mother "assaulted Father and pleaded guilty to criminal charges related to the assault." Fourth, Mother "refused to agree to therapeutic intervention for the child and Father." We consider each of these findings in turn.

**A.** **The court properly found Mother acted unreasonably when she violated the preliminary injunction by transferring hundreds of thousands of dollars to her personal bank account.**

¶38 Mother argues the superior court's unreasonableness finding based on her violation of the preliminary injunction is contrary to law. She argues that she (1) did not violate the preliminary injunction and (2) the multiple cash transfers she made from community bank accounts fell within the exceptions contained within the preliminary injunction statute.

¶39 Section 25-315(A)(1)(a) enjoins both parties from "transferring, encumbering, concealing, selling or otherwise disposing of any of the joint, common or community property of the parties except if related to the usual course of business, the necessities of life or court fees and reasonable attorney fees . . . without the written consent of the parties or the permission of the court." Mother relies on our decision in *Lonergan v. Strom*, 145 Ariz. 195 (App. 1985) to argue her transfer of community funds to a separate bank account did not violate the injunction because the funds were not "beyond the reach of the [c]ourt."

¶40 In *Lonergan*, the husband executed a "straw purchase" of the community home while the preliminary injunction was in effect, severing the joint tenancy. *Id.* at 197. The interest in the home was reconveyed to the husband the same day. *Id.* At some time after the conveyance, the husband and wife reconciled. *Id.* When husband died, his half of the community home went to his estate, rather than passing to his wife as a right of survivorship. *Id.* His wife challenged the transfer, arguing it

violated the preliminary injunction. *Id.* at 198. The superior court found in favor of Father's estate and declined to void the transaction. *Id.* at 197.

¶41 On appeal, we held that the conveyance constituted a transfer and was a "clear violation of the injunction." *Id.* at 198. We also held that the purpose of the preliminary injunction statute is to "forbid actions . . . that would injure or dissipate the property of the marital estate and to forbid actions that would place the property beyond the power of the court thus preventing the court from allocating the property in its final decree." *Id.* at 199. We ultimately held the superior court did not abuse its discretion because the conveyance did not contravene the intention of the injunction statute. *Id.* at 200. But we held that the court, in its discretion, would have been within its authority to treat a transaction as invalid where the injunction had been violated. *Id.*

¶42 Here, Mother moved hundreds of thousands of dollars from community bank accounts to an account that only she and her mother had access to. This constitutes a transfer. Mother claims her transfers were necessary for her to meet her needs and for attorneys' fees—two exceptions to the statute. But nothing in the record indicates that Father or someone else prevented her from taking the funds for these purposes directly from the existing community accounts where the transactions would have been transparent. She does not cite any authority giving her permission to transfer community funds to a separate bank account that only she has access to for the purposes of later paying for the necessities of life or attorneys' fees. Given our holding in *Lonergan*, we cannot say the superior court abused its discretion by finding Mother's transfers in contravention of the preliminary injunction to be unreasonable.

### B. The court properly found Mother acted unreasonably by not cooperating with Father in filing their taxes.

¶43 Mother also argues that the court erred in determining she was unreasonable for not cooperating with Father to file their taxes. She claims that she was cooperative and the court's determination to the contrary was unsupported by the evidence. On appeal, we do not reweigh the evidence, but defer to the family court's determinations of witness credibility and the weight given to conflicting evidence. *Gutierrez*, 193 Ariz. at, 347, ¶ 13.

¶44 The superior court made its determination after weighing the evidence and hearing testimony from both Mother and Father. The court received evidence that "[Mother] ha[d] given [Father] all the information

needed to work on getting taxes done for 2018, 2019 tax years." The court also heard testimony from Father stating, "[The tax returns] have not been filed with the government, because my wife failed to sign, or she refuses to sign them." The court apparently found Father's statement credible and gave it more weight than the evidence showing Mother's cooperation with the tax filings. The superior court did not abuse its discretion in finding Mother was uncooperative with the tax filings and was thus unreasonable.

### C. The superior court erred in finding Mother's criminal conviction was an unreasonable legal position.

¶45 Mother argues that the court improperly considered her guilty plea in the attorneys' fee award. As previously stated, the reasonableness of positions referred to in Section 25-324 are legal positions. *In re Marriage of Williams*, 219 Ariz. at 548-49, ¶¶ 9-10. "A legal position is one asserted in relation to the litigation." *Viands*, 1 CA-CV 16-0534, at *2, ¶ 8.

¶46 Here, Mother's conviction was ancillary to the proceedings and there was no argument or evidence presented that Mother's conviction unreasonably expanded or prolonged the dissolution proceedings in any way. *See Greenbank v. Vanzant*, 250 Ariz. 644, 651, ¶ 29 (App. 2021) (finding a party unreasonable because her "bad faith, lack of candor, and persistent violations of the Visitation Agreement unreasonably expanded [the] proceedings"). In fact, Mother introduced a letter from Father in which he admitted to provoking the incident that led to her arrest. The superior court erred by considering Mother's conviction in its fee award determination.

### D. The superior court erred in finding Mother was unreasonable for declining to agree to therapeutic intervention.

¶47 Finally, Mother claims the superior court improperly found her unreasonable for declining to agree to therapeutic intervention between Father and their minor child. Prior to trial, the parties filed a joint parenting plan which was approved by the superior court. The plan granted Mother and Father joint legal decision-making with "neither party having final legal decision-making authority in the event of a dispute." The plan also required the parties to participate in mediation or conciliation services before initiating court action. Less than one year after the court entered its order approving the plan, Father moved to authorize counseling for the parties' minor child.

¶48 The superior court denied Father's motion because Father did not provide any legal authority for his request and then construed the filing as a motion to modify the joint legal decision-making order. Because Father's motion was filed within one year of the joint parenting plan, he was required to file affidavits giving reasons to believe the present environment was a serious risk to the child's physical, mental, moral, or emotional health as required by Section 25-411(A), which he did not do. The superior court erred by finding Mother was unreasonable for declining to agree to therapeutic intervention when the court did not have authority to appoint a therapeutic interventionist at that time. *See Paul E. v. Courtney F.*, 246 Ariz. 388, 397, ¶ 37 (App. 2019) (the superior court did not need professional advice to make parenting time or legal decision-making determinations because it had already decided those issues).

¶49 We therefore vacate the superior court's fee award and remand for reconsideration in accordance with this ruling. Because Mother invoked Rule 82(a), ARFLP, the superior court shall also "make specific findings concerning the portions of any award of fees and expenses that are based on consideration of financial resources and that are based on consideration of reasonableness of positions" in accordance with Section 25-324(A).

¶50 Both parties request their attorneys' fees on appeal under Section 25-324(A). Father also requests attorneys' fees under Rule 25, ARCAP or A.R.S. § 12-349(A)(1) or (A)(3). In our discretion, we decline to award fees. On balance, we find Mother is entitled to her taxable costs on appeal upon compliance with Rule 21(b) of the Arizona Rules of Civil Appellate Procedure.

## CONCLUSION

¶51 We affirm the superior court's valuation of the community business, its denial of Mother's reimbursement claim for the McLintock house, and its ruling excluding Mother's expert from observing trial. But we vacate and remand the court's child support and attorneys' fees determinations for further proceedings consistent with this decision.

